Mrs. T. H. Crooke, Appellee, v. Farmers Mutual Hail Insurance Association et al., Appellants:

March 13, 1928.

Rehearing Denied June 26, 1928.

*Miller, Kelly, Shuttleworth & McManus,* for appellants.

*Hal W. Byers, Charles T. McEniry,* and *J. G. Mitchell,* for appellee.

Morling, J.—The industrial commissioner held that the claimant was engaged in clerical work only, not subject to the hazards of business, as distinguished from clerical employment, and therefore, by Section 1421, Subdivision 3c, Code of 1924, was excluded from the operation of the Workmen's Compensation Law. The district court held that plaintiff's injury was caused by hazards of the business, and that she was entitled to compensation.

Claimant was employed in the office of the defendant Farmers Mutual Hail Insurance Association, whose name is about as much of an indication of the nature of its business as the record

before us discloses. She stumbled over the transmission cord of an electrically driven adding machine in the office, fell, and broke her hip. Her injuries are very severe and permanent.

Plaintiff's duties were performed in a large room, in which many other employees were engaged, and also in a room known as a supply room. Her testimony is:

"I was supply clerk. I was also doing general office work, —anything that came up for me to do. By supply clerk I mean sending office supplies to the agents,—taking care of all the supplies for the company. I had very little filing to do. Some of my other work was making up lists of losses on the typewriter, typewriter work, and checking. * * * I had no typewriter for my own use at that time [of the injury], so I went over from my desk to one of the other desks, to use the typewriter, when it was necessary for me to make out a new list and add to the original. I was going over back from that desk to my own desk. I was returning to my desk. I passed between the adding machine and the wall [pillar] where the passage had been left, and the cord that runs from the adding machine to the wall was in such position that I caught my foot in it. It caused me to fall, and I broke my hip. As to the customary place of the adding machine in the office, it was sometimes one place and sometimes another. * * * it was customary for the adding machine to be at the place it was at the time I was injured. * * * it was supposed to be disconnected, when not in use. * * * I was injured in the large room where other women and girls were working. * * * We had our chairs between the wall and the desks, with our backs to the wall, and desks in front, facing north. * * * There were some pillars in the room there. That is what the adding machine was attached to * * * My desk was in a row of typewriters, but I didn't have a typewriter at that time. I had one on my desk. Mine was away, for some reason. * * * The desk upon which was the typewriter I had been using was east and a little north from the pillar. * * * I had been using this typewriter ten or fifteen minutes, to make a short list. Just before I worked at the typewriter, I had been working at my desk. * * * When I finished at the typewriter desk, I went around the adding machine down that way to my desk. * * * I had not been using the adding machine that morning. I don't know who had been using it. * * * I don't think it had been

used that afternoon at all. * * * As to who worked at the adding machine, there were several of the clerks using it. * * * Most everybody used it,—whoever was on that work. * * * Sometimes the adding machine was in the bookkeeper's office. Sometimes I have used it, but I did not use it any that day. * * * It might have been used any place. * * * My work was sending out supplies and making up lists of the losses, and doing anything which was to be done around the office. I did checking. In my employment in the office, I had done about every kind of work that was done. * * * In the years and years I worked there, I did most everything around that office. I worked in the looking-up department. Anything that comes in has to be looked up, and information got on it. * * * The looking up is done all over the office. * * * They do a pretty big business. I don't know just how many policies a day, but they write over nine million dollars every year. * * * There is not very much of this looking-up business that could be done at a desk. You have to go to the records all over the office. A great deal you have to hunt over. Climb stepladders. * * * for five years before the injury, I did not do very much stenographic work. I am able to use the typewriter as a stenographer.''

Another witness testifies that claimant ''does checking and sending out supplies. * * * She was sending out supplies, and she had to be on her feet quite a little. .* * * I couldn't see her when she was in the supply room.''

The foregoing is the testimony, so far as it shows the business of the defendant and the work and duties of the claimant. It is assumed that the work of the other employees there was clerical, if claimant's was.

By Section 1421, Code of 1927, there is excepted from the meaning of the word ''workman'' or ''employee,'' as used in the Workmen's Compensation Statute:

''b. A person engaged in clerical work only, but clerical work does not include anyone who may be subject to the hazards of the business.''

Claimant contends that she was not engaged in ''clerical work only,'' and that she was ''subject to the hazards of the business.'' The hazards of the business, she urges, are those resulting from the use of office machines operated by electricity

(as to the use of which in the office there is no reference to any, except the adding machine), danger of contact with the machine, with an exposed electric wire, falling over the cord, use of step-ladder.

I. Was claimant engaged in clerical work? The substance of claimant's argument is that a clerk, within the meaning of the statute, is one included in that branch of Webster's definition, ''one employed to keep records or accounts, a scribe, an accountant, as the clerk of a court, a town clerk;'' and that ''clerical'' is ''of or relating to a clerk or copyist or to writing.'' Webster's definition is not, however, so circumscribed. The paragraph referred to is:

''4. One employed to keep records or accounts, to have charge of correspondence, or the like, with or without administrative, executive, or other authority; a scribe; an accountant; as, the clerk of a court; a town clerk; a bank clerk. Clerk is an indefinite term of wide application, and may include employees clothed with authority to act in various weighty matters for their employers, such as the teller of a bank or the secretary of a corporation, as well as those whose duty is the keeping of the simplest records.''

We do not at this time consider the use in the United States of the term as an assistant or salesman in a shop or store.

In the Century dictionary, ''clerk'' is said to include:

''5. One who is employed in an office, public or private, or in a shop or warehouse, to keep records or accounts; one who is employed by another as a writer or amanuensis.''

The term ''clerical work'' must be given the interpretation put upon it in ordinary, popular speech, when designating or denominating the kind of work in which an employee is engaged. In interpreting the statute, regard must be had to its purpose, and the evils which it was designed to remove.

Workmen's compensation statutes grew out of the hazards to employees engaged in modern industry, the consequences of which, prior to their enactment, by reason of the contributory negligence rule, the fellow-servant rule, and the doctrine of assumption of risks, fell mostly upon those who were least able to bear them,—the workmen and their families. Some workmen's.

compensation laws are specifically limited to hazardous or extra-hazardous employments, and the particular case must be brought within the statute. Ours is drafted on the reverse theory, of entitling to the benefit of the act employees other than those which the legislature has excluded.

Nevertheless, the general purpose of the act is (though not generally so limited) to make statutory compensation to employees for injuries resulting from the hazards of the business. It is plain that those who are engaged "in clerical work only," in the sense in which that term is ordinarily used, and who may not be "subject to the hazards of the business," are not within the protection of the act.

"Clerical work" is contrasted with work that brings the employee into the field of "hazards of the business." It is well known that, in many industries, an employee whose work is of itself clerical is, nevertheless, subject to the hazards of the business; as he may be required, in the performance of his duties, to expose himself to dangers from operation of machinery, from the movement of material or cars, from defects in the premises where the workmen are employed, and the like. Such persons, at least as to injuries resulting from the hazards of the business, are not excluded from the benefits of the law.

It is plain that the term "hazards of the business" could not have been intended to cover hazards "of clerical work only." Clerical work, within the contemplation of the legislature, is not hazardous, and cannot be a hazard of the business. If the legislature had in mind as compensable, injuries arising from hazards "of clerical work only," the exception would be meaningless. That one engaged "in clerical work only" is not an employee, within the meaning of the act, and that he is entitled to compensation if he is "subject to the hazards of the business, inclusive of the hazards of purely clerical work of the business," is a contradiction in terms. It is evident that the legislature did not consider that one engaged in "clerical work only" was subject to hazards other than those to which people in the ordinary routine of life are exposed. In what sense, then, did the legislature use the word "clerical?"

It would be a narrow use of the word "clerk" or "clerical," and an interpretation rendering it in practice meaningless, to confine it to one who is always occupied as a mere amanuensis,

scribe, or transcriber, or to one who does only stenographic or typewriting work, or is confined to one desk, as counsel seem to think. In practice, even a stenographer or typist is not so circumscribed in her duties. From the very necessity of the case, she is required to go to the office records, to consult books and files, to make search, to take from files, to use the adding machine and other equipment. A "file clerk" or "supply clerk" is, in ordinary acceptation, and *ex vi termini,* a clerk, and his work is clerical. The use of the term "clerk," the name which plaintiff gives to her position, "supply clerk," denotes the clerical character of her employment. Her specific duties, which she enumerates, are clerical. She is not a porter, handler, trucker, or janitor. The word "clerk" does not import that plaintiff was engaged in the physical work of receiving, trucking, handling, storing, transporting, or shipping in such quantities as to make her a manual laborer. That other clerks were employed in the same office; that all of the work of the office was of a clerical nature; that, in the performance of plaintiff's duties, she was required to move around, and might accidentally stumble or fall over a rug or article of furniture, as anyone might do in an office or store or a home, do not make the work of the office or the employment hazardous, or the employee subject "to hazards of the business," within the meaning of the law. We think no one would argue that a stenographer employed in a small real estate or insurance or law office, for instance, to assist in the ordinary work of such an office, keeping the files and books, putting them on and taking them off the shelves, mounting a stepladder to do so, opening and closing the safe, operating a typewriter or adding machine, though liable to accidents there, as everywhere, if there were but one employee in the office, is "subject to the hazards of the business," so as to bring him within the Compensation Law. That the work increases so as to require two such employees or a dozen or fifty, or that several rooms or floors are required for them, and that the work becomes classified and distributed among individuals or departments, and that clerks are required to go from one to the other, and be liable to fall, in the room or on the stairs, or be caught in the elevator, do not change the character of the employment, or make it any the less clerical.

Counsel's thought seems to be that clerical work is now be-

ing performed largely with the use of machinery, and that, therefore, clerical employment is hazardous, and injuries from it should be deemed compensable. Changes and improvements in appliances for performing clerical work; evolution from the goose quill to the typewriter, from the column of figures and pencil to the adding machine, do not change the meaning of the language, or make the work any the less clerical. Such changes may call for a change in the law, to meet new conditions, but cannot be utilized as a reason for giving the language used in the statute a meaning which it did not have when the law was enacted, and does not now have.

The commissioner found, on the evidence, that claimant was engaged in clerical work only. This he might well find as a fact on the evidence, and his finding of fact is conclusive. *Kent v. Kent*, 202 Iowa 1044, and cases cited.

Claimant relies upon *Kent v. Kent*, 202 Iowa 1044, as sustaining her contention that she was exposed to the hazards of the business. The claimant in that case was employed as cashier and bookkeeper, but in connection with business which was not merely clerical,—a retail grocery business. The hazards that she was exposed to and which caused her injury were hazards of the grocery business. It is there said:

"Nor do we think it essential to a right to compensation for injury to a clerical employee that, at the time of injury, the employee be engaged in work that was a departure from the zone of clerical employment, such as, in this case, serving customers in the grocery store. If the employee, in addition to 'clerical work,' engaged in other work, not clerical, but pertaining to the carrying on of the business of the employer, he would not be engaged in 'clerical work only.' The statute affords protection to a clerical employee who is subjected to the hazards of the business and receives an injury caused thereby and arising out of and in the course of the employment, without regard to whether the thing being immediately done by the employee pertained to the clerical work or to the other work of the employer. To so construe the statute denies to the clerical employee compensation for an injury caused by a hazard of the clerical employment, but affords protection when such an employee is subjected to a hazard of the employer's business aside from the clerical employment, and receives an injury arising out of and

in the course of the employment, proximately caused by a hazard of such business. * * * The causal connection between the injury and the hazard of the employer's business appearing, the mere fact that, at the instant of receiving the injury, the appellee was going to answer a telephone call that is not shown to have been upon her employer's business, does not deprive her of compensation, under the liberal construction given to the Compensation Law by the courts. * * * Here, appellee was engaged in her work in the appointed place. Her descent of the stairway with the obstructing scale arm subjected her to a hazard of the employer's business. The mere fact that the telephone call may have been for her personally had no causal connection with her injury.''

In that case it was also said:

''The facts of this case and the manner of its presentation here require us to determine only that the benefits of the act are extended to an employee of the excluded class when the injury complained of proximately results from, or is occasioned by, a hazard of the business; and our decision goes no further than this.''

Likewise here, we are not called upon to determine whether a clerk who is ''subject to the hazards of the business'' is entitled to compensation for injuries sustained in the employment, though not resulting from such hazards; for the claimant, in our view, was not ''subject to the hazards of the business,'' within the meaning of the statute.

We are of the opinion that the industrial commissioner rightly disposed of the case, and that the judgment of the district court should be reversed.—*Reversed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.