## Schmitt, Auditor of City of Louisville v. Martin Dooling, William Sabrie, William Weissenberger and Joseph Binder.

(Decided November 2, 1911.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Office and Officer—City Firemen—Right to Assign Salary—Public Policy.—It has frequently been held that a public officer may not anticipate his salary, that is he cannot assign it before it is due, it being against public policy, upon the ground that to do so, he would lose interest in his work and his service would accordingly be less valuable.

2. Same—Public Officer—Public Duty of—Efficiency Must not be Destroyed.—A fireman is a public officer within the meaning of the term in its broadest sense, and to permit him to assign his salary would have a tendency to impair his efficiency. He is not denied this right because he is a public officer, but because he is discharging a public service the efficiency of which must not be impaired.

HUSTON QUINN, WILLIAM W. CRAWFORD for appellant.

A. J. BIZOT, P. H. SAVAGE for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Martin Dooling, William Sabrie, William Weissenberger and Joseph Binder are members of the Fire Department of the city of Louisville. At some time prior to July 1, 1911, each of them assigned to L. Simons & Co. his salary for the month of July. This assignment was presented by L. Simons & Co. to Adolph Schmitt, Auditor of the city of Louisville, on July 24th, 1911. On the 28th of July following, these firemen, through their attorney, delivered to the Auditor a notice, advising him that the assignments which were held by L. Simons & Co. were void, and that he must not pay the salaries due them for the month of July to L. Simons & Co. A similar communication was addressed to the Mayor. The council approved the payroll for July, and on August 4th the warrants were drawn by the Auditor, dated August 5th, and directed to the City Treasurer, in favor of the plaintiffs, as follows: Dooling, $99, Sabrie, $66.72, Weissenberger, $84.40, and Binder, $84.40. These warrants were delivered by the Auditor to L. Simons & Co. after said Simons & Co. had executed to him for the city a bond in-

demnifying the city against loss on account of his having surrendered the warrants to them. After the warrants were issued, and before they were delivered, the claimants, through their attorney, called on the Auditor for them, but the Auditor, having accepted the bond of L. Simons & Co., refused to deliver them. A suit was thereupon instituted by these firemen in which they sought to mandamus the Auditor, compelling him to draw his warrants in favor of the plaintiffs for their salaries. The Auditor sought to have L. Simons & Co. made parties defendant; to which plaintiffs objected. The court sustained the objection upon the ground that L. Simons & Co. had no interest whatever in the litigation, but that the question involved was one purely between the plaintiffs and the Auditor.

Two questions were raised in the lower court, first, the right of a fireman to assign his unearned salary, and second, the right of plaintiffs to proceed by mandamus. It was most earnestly insisted for the defendant, that as firemen are not public officers they may assign their salary before it is earned, and that, as it was made to appear that Simons & Co. were asserting a claim to this same salary, no mandamus should have been issued, but that Simons & Co. should have been made parties to the suit and required to litigate the question of ownership of this money with the plaintiffs. The chancellor was of opinion that mandamus was the proper remedy for plaintiffs, and that firemen are officers, and, as such, it is against public policy to permit them to assign or transfer their salary to another before it is earned. He accordingly entered a decree directing the Auditor to issue to the plaintiffs the warrants for their respective salaries due them for the month of July. From that judgment this appeal is prosecuted. It is admitted that the assignments to Simons & Co. were made prior to July 1, 1911; that before the payroll for the month of July was approved by council, the Auditor and the Mayor had been notified by these firemen that the assignments were void and that no payment must be made thereunder to Simons & Co.; that the firemen, through their attorney, called upon the Auditor and demanded that the warrants be delivered to them, and that the Auditor declined to comply with this request, but delivered them to Simons & Co., who received the money on them.

It has been frequently held that a public officer may not anticipate his salary, that is, that he cannot assign it before it is due. The reason for this rule, as announced by all the courts of this country and of England, is that it is against public policy to permit it to be done, upon the ground that it would tend to impair the service to permit an officer to draw in advance his pay therefor —that he would lose interest in his work and that his service would accordingly be less valuable.

In Holt v. Thurman, 111 Ky., 84, this court had under consideration the right of a city attorney, employed at a fixed salary, to assign the unearned portion thereof, and, in holding that it was against a sound public policy to permit him to do so, adopted the text upon this subject as found in the American and English Encyclopedia of Law, Vol. 2, 2nd Ed., p. 1033, as expressing the best reason for the rule. This text is as follows:

"The protection thus extended to those engaged in the performance of public duties is not based upon the ground of their private interest, but upon the necessity of securing the efficiency of the public service by insuring that the funds provided for its maintenance shall be received by those who are to perform the work, at the periods appointed for their payment. The assignment of such funds before they are due impairs the efficiency of the public service, and is void both in law and equity as being against public policy."

An examination of all the authorities which hold that it is against public policy to permit a public officer to assign the unearned portion of his salary shows that they are rested upon the same principle, to-wit: That such assignments, if countenanced, would tend to impair the efficiency of the service.

The word "public officer," as used in these opinions, means one who renders a public service; a service in which the general public is interested. For if it were not so the reason for the rule would be wanting, inasmuch as all the opinions expressly declare that the rule is not adopted for the benefit of the one rendering the service. Is a fireman a public officer within this meaning? It is insisted for appellant that he is not; and the case of City of Lexington v. Thompson, 113 Ky., 540, is cited as supporting this view. In that case it was held that a fireman was not such an officer as that the Legislature was authorized to fix or regulate his compensation. The word "officer," as used in that opinion, was

restricted to its narrower meaning. Webster, in his New International Dictionary, defines "office" to be—

"A special duty, trust, charge, or position, conferred by an exercise of governmental authority and for a public purpose; a position of trust or authority conferred by an act of governmental power; a right to exercise a public function or employment and receive the emoluments (if any) thereto belonging; as an executive or judicial office; a municipal office; distinguishing from an employment. In its fullest sense an officer embraces the elements of tenure, duration, duties, and emoluments, but the element of emoluments is not essential to the existence of an office."

And the same authority defines an "officer" to be—

"One charged with a duty; one who holds an office; a person lawfully invested with an office, whether civil, military, or ecclesiastical, and whether under the State or a private corporation or the like."

In Olmstead v. Mayor, 42 N. Y. Super. Ct., 481, it is said the term "officer" implies—

"An authority to exercise some portion of the sovereign power of the State, either in making, administering, or executing the laws."

In Eliason v. Coleman, 86 N. C., 235, it is said:

"The true test of a public office seems to be that it is a part of the administration of government, civil or military."

Both of these definitions are quoted with approval in Commonwealth v. Bush, 131 Ky., 384.

In People v. Coler, 166 N. Y., 1, 82 Am. St. Rep., 605, we find that—

"An officer is a part of the personal force by which the State acts, thinks, determines, administers and makes effective its constitution and its laws operative."

It is apparent that a fireman is a public officer within the meaning of the term in its broader sense, as defined by Webster and the opinions from which the foregoing citations are taken. Public policy would require that he be not permitted to anticipate his salary as much so as it would that the city attorney, the clerk of the Chancery Court, the county attorney, policeman, or other officer, should be denied this privilege. Policemen and firemen are, in legislative acts regulating protection of life and property in the various cities throughout the State, treated and looked upon as belonging to a class. By a wise provision of the law neither can be discharged

except for cause and after a full hearing. Their tenure of office is during good behavior; and a pension system is provided for firemen and policemen alike. Each are engaged in the discharge of a governmental function. This court has frequently so held as to policemen, and in Terrell v. Louisville Water Co., 127 Ky., 77, it was so held as to firemen in the following language:

"In furnishing to its citizens fire protection, the city is discharging a governmental function."

Policemen are charged with the especial duty of protecting the lives of the citizens within certain territorial limits, and of preserving the public peace. Firemen are charged with the especial duty of protecting the city from the ravages of fire, their duty being especially the protection of property. The more efficient the fire department, the less liability there is for injury or damage to the city resulting from fire losses; hence there is all the more reason for applying that policy to firemen which denies to an officer the right to assign his unearned salary. In order to secure the protection of property, public and private, in every municipality in the State, it is necessary that the fire department be maintained in its highest state of efficiency; and as it would have a tendency to impair this efficiency to permit the members of the fire department to assign their salaries before maturity, it is the exercise of a wise public policy to hold that it may not be done. The fireman is not denied this right because he is a public officer, but because he is discharging a public service, the efficiency of which must not be impaired.

The assignment of the salary before it was earned by these firemen being void, the chancellor correctly held that Simons & Co. had no interest in the matter in controversy between the firemen and the Auditor, and hence he did not err in refusing to prevent Simons & Co. to be made parties defendant. The assignment being void, Simons & Co. had no possible interest in the matter; and the Auditor showing no valid reason why the voucher for the pay of these firemen should not be drawn and delivered to them, the chancellor correctly held that they were entitled to the writ directing this to be done. This precise question was decided in Hewitt v. Craig, 9 Ky. Law Rep., 232.

Perceiving no error in the judgment, it is affirmed.