## MCNALLY v. CITY OF SAGINAW.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—"OFFI-
CERS."

The distinction between officers and men of the city fire
department of the city of Saginaw is recognized in the
fire department ordinance and, under the workmen's
compensation act, part I, § 7 (2 Comp. Laws 1915, § 5429),
defining employees, a city fireman is not a city "official"
within the exception of the statute.

2. STATUTES—CONSTRUCTION—WORKMEN'S COMPENSATION ACT—
HOME RULE LAW.

The workmen's compensation act is presumed to have been
enacted with knowledge of, and is to be construed with
reference to, existing relevant laws.

3. MASTER AND SERVANT—MUNICIPAL CORPORATIONS—WORKMEN'S
COMPENSATION ACT—SAGINAW CHARTER—"OFFICERS."

City officials are primarily creatures of the charter, to which,
as a general rule, reference should be made in differentiat-
ing between city officials and employees under the work-
men's compensation act, part I, § 7 (2 Comp. Laws 1915,
§ 5429).

4. SAME.

A captain of the fire department of the city of Saginaw is,
under the city charter, §§ 142, 151, 160, an official com-
ing within the exception of subdivision I, § 7, part I of the
workmen's compensation act (2 Comp. Laws 1915, §
5429), and consequently is not entitled to compensation
under its provisions.[1]

Certiorari to Industrial Accident Board. Submitted
April 9, 1917. (Docket No. 95.) Decided July 26,
1917.

Ephraim J. McNally presented his claim against the
city of Saginaw for injuries received in defendant's
employ. From an order awarding compensation, de-
fendant brings certiorari. Reversed.

[1]On construction and effect of workmen's compensation acts,
generally, see comprehensive note in L. R. A. 1916A, 23.

*Robert T. Holland* (*Purcell & Travers,* of counsel), for appellant.

*Otto & Davis* (*R. L. Crane,* of counsel), for appellee.

STEERE, J. On February 17, 1916, plaintiff, Ephraim McNally, while assisting in placing a sleigh in hose house No. 1 of the fire department of the city of Saginaw, slipped and suffered a strain from which a rupture resulted, necessitating a surgical operation. Following the accident he was absent from duty until April 3, 1916.

Under the provisions of an ordinance of said city he received full pay for four weeks during the period of his incapacity. He subsequently made application for compensation under Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5423 *et seq.*), resulting in an award to him by the Industrial Accident Board of 4½ weeks' compensation at one-half his average weekly earnings and $100 for medical and surgical expenses. It is undisputed that this accident arose out of and in the course of his employment as a captain in the fire department of said city.

The city of Saginaw denied liability, and contests his claim, as stated in defendant's brief, on the ground that at the time of his injury he was an official of the city, and therefore not entitled to benefits under the act, that he made no application for compensation until April 10, 1916, subsequent to the time he made application for and accepted from the city of Saginaw full salary for a period of four weeks under the provisions of an ordinance of said city regulating the fire department, which was a waiver of any claim he might otherwise have under the act, and which, in any event, should be credited in reduction of the amount awarded him, provided he is found to come under the act. The printed record contains the following somewhat equivocal agreement:

"It is hereby stipulated and agreed between the claimant and the respondent that the claim filed with the industrial accident board be amended so as to show that the respondent claims for a period of disability from the 17th day of February, A. D. 1916, to April 3, 1916, regardless of any compensation received from the city of Saginaw other than that which has been paid under the workmen's compensation law. We are making that claim under section 5 of part 3 of the Pub. Acts of 1912, the same being Act No. 10.

"The respondent consents to the amount of the claim, simply claiming the hospital bill and doctor's bill and the amount shown by the exhibits and the compensation this man would be entitled to under the compensation law from February 17, 1916, to April 3, 1916."

Whatever the purpose of this stipulation, it is fairly inferable from other parts of the record and the briefs of counsel for both parties that the important question raised and sought to be litigated is whether plaintiff was when injured an employee or a public officer of the city of Saginaw under its charter, in contemplation of the provisions of part 1 of the employers' liability act (2 Comp. Laws 1915, §§ 5427, 5429), which, so far as material here. are as follows:

"SEC. 5. The following shall constitute employers subject to the provisions of this act:

"1. The State, each county, city, township, incorporated village and school district therein. * * *

"SEC. 7. The term 'employee' as used in this act shall be construed to mean:

"1. Every person in the service of the State, or of any county, city, township, incorporated village or school district therein, under any appointment, or contract of hire, express or implied, oral or written, except any official of the State, or of any county, city, township," etc.

In *Purdy* v. *City of Sault Ste. Marie*, 188 Mich. 573 (155 N. W. 597), it was held that the title of this act was sufficient to include municipal corporations, and

that the law was not optional as to them.  The legislature did not see fit to furnish a statutory definition of an "official" of any of the governmental entities enumerated, and the difficulty of formulating an adequate one of general application is made manifest by an examination of the many, and not always harmonious, authorities in which that subject has been under discussion.  *Vide* Mechem on Public Officers, chap. 1; 6 Words and Phrases, p. 4933; 28 Cyc. p. 585, and, more directly as to policemen and firemen, the footnotes to *Schmitt* v. *Dooling*, 145 Ky. 240 (140 S. W. 197), found in 36 L. R. A. (N. S.) 881 (Am. & Eng. Ann. Cas. 1913B, 1078).

Not long before January 1, 1913, the city of Saginaw adopted a new charter by popular vote under the so-called home rule law, providing for a commission form of government with members of its commission, which constitutes its governing body, as heads of various departments.  By this charter the fire department was put under the general supervision and control of the mayor as commissioner of health and safety.  Section 142 of said charter provides, in part, that the city council upon the recommendation of the commissioner of health and safety shall appoint "a chief" of the fire department, and section 151 provides:

"Upon recommendation of the commissioner of health and safety the council shall appoint such assistant chiefs, captains and other subofficers as the proper organization of the fire department may require."

Section 360 provides, in part:

"Except as may be in this charter otherwise specifically provided for, all persons in the employment or service of the city on the 31st day of December, 1913, shall continue in their various employments and duties until either reappointed or their service and employment be terminated by action of the council of the city of Saginaw acting under and by virtue of the terms of this charter."

Plaintiff had been for nearly 30 years employed in the fire department of the city of Saginaw, and for about 11 consecutive years preceding the accident was a captain in that service. Being in the service of the city in that capacity on December 31, 1913, he so continued without any further or special action on the part of the municipal authorities in reference to him, recognized and paid as a regular captain of that department under and by provision of the new charter.

Prior to the time of the injury complained of an ordinance of the city was adopted for the proper administration of the affairs of the fire department, which, following the charter, provides in part as follows:

"SECTION 1. The fire department of the city of Saginaw shall consist of a fire chief and such assistant chiefs, captains and other subofficers as the proper organization of the fire department may require, and not to exceed 75 firemen.

"SEC. 2. The fire chief shall be the head of the fire department and shall have the custody and control of all engines, hose carts, * * * and all other public property of said department, subject always, however, to the supervision of the commissioner of health and safety. He shall devote his whole time to the affairs of said department and shall preserve and enforce discipline and obedience to orders among members thereof.

"SEC. 3. Upon recommendation of the commissioner of health and safety, the council shall appoint such assistant chiefs, captains and other subofficers and firemen as the proper organization of the fire department may require. Each of said officers shall be a fireman and shall take, subscribe and file with the city clerk the oath of office prescribed by the charter."

Section 4 relates to the selection and appointment of "firemen," and concludes:

"Upon approval by the council of the appointment of the commissioner of health and safety of any person as fireman, such fireman shall take, subscribe, and file

with the city clerk the oath of office prescribed by the charter."

By Section 5:

"The commissioner of health and safety, or the fire chief, by and with the approval of the commissioner of health and safety, shall have power to summarily dismiss from the department, suspend without pay, reduce in pay or in rank, any member of the department whenever such action shall be deemed for the best interests of the department."

Section 11 makes it the duty of the fire chief to attend all fires in the city, if possible, and in case of his absence confers his powers on his assistant, providing further that:

"In the absence of the fire chief or an assistant fire chief the captain of the company first present at the fire shall take command of all fire companies at such fire and during the absence of such officers shall have and exercise all the powers of the fire chief."

Several sections are devoted to the powers and duties of the fire chief at fires. Section 19 appears to recognize that all members of the fire department are not officers, in the following language:

"The officers and men of the fire department with their fire apparatus of all kinds when going to, or on duty at, or returning from a fire, shall have the right of way over any person, horse or vehicle in any and all streets, alleys and public places within said city."

It is first broadly contended in behalf of defendant that:

"In the very nature of things under the charter and ordinances of the city of Saginaw a fireman must be deemed to be an official of said city."

In support of this contention the following is quoted from *Blynn* v. *City of Pontiac*, 185 Mich. 35 (151 N. W. 681):

"Being satisfied that a policeman is an appointive

officer under the provisions of the charter of this city, required to take an official oath of office, which it appears was done in this case, it follows that he came within the exception in subdivision 1, § 7, pt. 1, Act No. 10, Pub. Acts 1912, Extra Session (2 How. Stat. [2d Ed.] § 3945, 2 Comp. Laws 1915, § 5429), and is not an employee, as defined by said act, and therefore does not come within its provisions."

Blynn was a member of the police force of the city of Pontiac. His duties, as the name applied to his position signified, were to assist in enforcing the laws, prevent crime, lawlessness, and disorder, protect the persons and property of citizens, and preserve the public peace and safety—to exercise a portion of well-understood and important sovereign police power of the State. In that relation and as applied to such functions, in connection with the charter provisions of that city as to the manner of his selection and qualifications, he was construed to be an officer, and not a mere employee, within the meaning of the act. It was not held and could not in reason be contended that all persons in the service of a city in any capacity, regardless of the nature of their duties, could be made officers within the meaning of the act by appointment of the city council or commission, and a requirement that they take an oath of office. In the *Blynn Case* it was pointed out that the charter mentioned policemen independently of the employees of the department, recognizing a distinction between the two. Here the ordinance recognizes "officers and men of the fire department."

As is customary with cities of its size and importance, the city of Saginaw had maintained under its old charter, and continued under the new, a paid fire department with a force of men regularly employed, trained, organized, and equipped to efficiently fight and prevent the spread of fires, their duties presumably devoted and limited to preparation for and per-

formance of that service. While for proper organization and efficient administration of the department certain members of its force are given rank and authority over others, they are all engaged in a service the duties of which, although important and requiring special training, are largely subordinate, physical, and of comparatively narrow scope in the governmental affairs of a municipality. Conceding that the city is performing a governmental function in furnishing its citizens fire protection, and is therefore not liable in damages for negligence while in the discharge of such function, its immunity from liability in that particular is not contingent on whether its agents in the service are called officers or employees. To indiscriminately classify all men in the fire department as officers would be an anomaly which is recognized in the city ordinance upon that subject and which the statute cannot be reasonably construed as contemplating. The more serious question is whether the chief, assistant chiefs, and captains of the fire department provided for in the charter come within the exception of the employers' liability law as city "officials."

That statute is presumed to have been enacted with knowledge of and to be construed with reference to relevant existing laws. The general law providing for incorporation of cities (Act No. 279, Pub. Acts 1909 [1 Comp. Laws 1915, § 3304 *et seq.*]), passed in compliance with section 20, art. 8, of our present Constitution, specifies in section 3 (1 Comp. Laws 1915, § 3306) that each city charter adopted under it shall provide for selection, by election or appointment, of a mayor, a legislative body, a clerk, treasurer, assessor or board of assessors, a board of review and "(*b*) for the election or appointment of such other officers as may be deemed necessary." Manifestly the law means that the incumbents of created offices shall be

officers in fact as well as name, clothed to a substantial degree with personal responsibility and governmental authority, to be exercised for a public purpose. Subject to such limitations, cities adopting a charter under the present State Constitution, and home rule act passed pursuant to it, must provide for certain officials specified in the act, and may further provide for the election or appointment of such other officers as are deemed necessary by those framing and adopting the charter. The act does not provide or contemplate that general authority can be delegated to subordinate bodies, or designated officials, to create municipal offices not named in the charter, and thus make employees selected to fill them city officials. City officials are primarily creatures of the charter, to which as a general rule reference should be had in differentiating, under the exceptions in the employers' liability law, between city officials and "every (other) person" in the service of the city "under any appointment or contract of hire, express or implied, oral or written." The charter of Saginaw in providing for a fire department specifically designates as essential officers of such governmental activity a "chief," with such "assistant chiefs" and "captains" as a proper organization of the department may require. It also authorizes, in general terms, without other designation, "subofficers," or persons selected from amongst the firemen, with minor authority over others in the performance of their common duties, acting as petty officers of the organization in respect to their relations with each other. Such employees do not thereby become public city officials in the true sense of that term.

The charter has, however, in unmistakable language expressly created the offices of chief, assistant chiefs, and captains, and by recognized official titles which according to common conception distinguish, in im-

portance and implied authority, officers from employees. Not only do the positions provided for and designation of incumbents imply official responsibility and command, but by the authorized scheme of organization it is provided that in certain contingencies any one of them may, by virtue of his office, be required to assume at fires not only full command of the active operations of the department, but authority over the property, conduct, and services of citizens as in his judgment the emergency demands—a manifestly important exercise of the sovereign power of local government.

For these reasons, we are constrained to conclude that under the facts shown and charter provisions cited a captain of the fire department of Saginaw is, in contemplation of the employers' liability law, an official of the city coming within the exception of subdivision 1, § 7, pt. 1 (1 Comp. Laws 1915, § 5429), of the act, and therefore not entitled to compensation under its provisions.

The order of award made by the industrial accident board is therefore reversed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.