SEISMOGRAPH SERVICE CORPORATION et al. v. MASON et al.

No. 31284. Feb. 1, 1944.

Rehearing Denied Feb. 21, 1944.

*145 P. 2d 967.*

J. B. Houston and J. H. Kolbus, both of Tulsa, and W. R. Withington, of Oklahoma City, for petitioners.

Ogden & Wallace, of Ardmore, and Randell S. Cobb, Atty. Gen., for respondents.

DAVISON, J.  This is an original proceeding to review an order of the State Industrial Commission awarding compensation to Eugene J. Mason, claimant, for temporary total disability determined to exist by reason of accidental personal injuries to his back, sustained in the course of his employment as a helper on an observation truck of a seismograph crew.

In 1940 to 1941 the claimant was employed by the petitioner in the capacity above indicated.

In October of 1941 claimant filed with the State Industrial Commission four employee's first notices of injury, in each of which he claimed to have sustained a separate accidental injury resulting in disability. The several injuries were asserted to have occurred successively on the following dates: the first, June or July of 1940; the second, February of 1941; the third, June 10, 1941; and the fourth, July 23, 1941.

Issues were joined before the commission by separate answers filed by the petitioners to each of the claims. The claims were consolidated for the purpose of hearing.

Upon hearing it was determined that claimant's disability attributable to an injured back was due to accidental personal injuries sustained on June 10, 1941, and July 23, 1941; that he was temporarily totally disabled and should be paid compensation for such disability for the duration thereof, not to exceed 300 weeks. The commission also determined and found that the claimant's employment was in one of those hazardous occupations subject to and covered by the provisions of the Workmen's Compensation Law.

With the latter determination of the commission, the petitioners first disagree. They assert that claimant's employment and occupation does not fall within the purview of the Workmen's Compensation Law. The questions presented must be determined by reference to the controlling statute. One of the employments defined as hazardous and covered by the act is "wells." 85 O. S. 1941 § 2.

The claimant asserts that his employment was connected with wells and allied plants and works within the meaning of that language as used in the statute. This the petitioners deny.

A more particular review of the facts in connection with this issue is essential to its determination. The evidence relating to the nature of employment in which the respondent was engaged at the time of the injuries established the

following facts: The business of the petitioner was conducted for the purpose of obtaining data relative to subsurface structures. This was accomplished by the use of seismographic instruments. Holes approximately two inches in diameter were drilled. These holes varied in depth from 20 to 300 feet. Explosives were placed in them and exploded. Reverberations were thus produced which were recorded by means of geophones. The information thus obtained was used by those interested in drilling for oil.

While on occasion the holes above mentioned were later used for obtaining water or as water wells by the landowner where the hole had been drilled, such was not their primary purpose, nor even one of their purposes.

The machinery used for drilling the holes above indicated was the same as that used in drilling for oil except with respect to size. It was smaller.

If these h o l e s constituted "wells" within the meaning of that word as used in the statute, then those engaged in drilling the same, as well as those engaged in work connected therewith, were covered by the Compensation Law. Oklahoma Company et al. v. State Industrial Commission, 149 Okla. 18, 298 P. 1051. Referring to section 2, supra, we said in Ice v. Gardner, 183 Okla. 496, 83 P. 2d 378:

". . . A great number of such employments are there listed. Among them appears, simply, the word 'wells,' and same has repeatedly been construed by this court as including oil wells. The statute does not describe or limit the nature or kind of work in connection with wells (except that by the succeeding section it must be manual or mechanical work), and so we have held that a workman engaged in firing boilers used in connection with the drilling of a well is protected by the act. Oklahoma Company et al. v. State Industrial Commission, 149 Okla. 18, 298 P. 1051. If firing boilers used in connection with the drilling of a well is covered by the act, then it is difficult to perceive why working with a water line or any other instrumentality directly connected with

the operation of a well, after it has been drilled, is not equally within the act. . ."

Governing importance on this phase of the case therefore turns upon the meaning of the word "wells."

Petitioners contend in substance that a hole or shaft in the ground is not a well and cannot properly be described as such unless it is used to produce water, oil, gas or some like substance. This view corresponds to some of the definitions of the word (68 C. J. 168) but ignores its broader meaning as exemplified by the following quoted definitions from Webster's New International Dictionary (pg. 2900):

"4. A shaft or hole sunk to obtain oil, brine, gas, etc.; loosely, any shaft or pit dug or bored in the earth. . . .

"7. Any space so enclosed, partly enclosed, or otherwise constructed or shaped, as to suggest, or be likened to, a well for water, as a vessel or space for holding lubricating oil, etc., or a deep drawer in a bureau or desk. . . .

"13. Engin. A pit or hole in the ground reaching to hardpan or bedrock; hence, a hollow cylinder of reinforced concrete, steel, timber, or masonry, built in such a hole as a support for a bridge or building. . . .

"16. Mil. A shaft or excavation in the earth, in mining, f r o m which run branches or galleries; a shaft."

The foregoing definitions, while in some instances not particularly applicable to the case at bar, emphasize that the simple word "wells" may have a much broader application than petitioners attribute to it. This court has already exhibited a disposition to treat the word in a broad and liberal fashion.

To illustrate, under petitioners' theory, a hole in the ground cannot be classified as a well until it is used for the production or procurement of some substance as water, gas, or oil. Thus a hole or shaft is not a well until completed. Under their theory holes being drilled are not wells and persons engaged in drilling holes are not working on wells until the same have been com-

pleted; they are merely doing work preliminary to the creation of wells. Thus it could with logic be urged that a workman engaged in sinking a shaft which it is hoped will later be used as a well is not working on "wells" because under petitioners' view there is no well and the statute does not specifically enumerate drilling to create "wells" as a covered employment.

This court in the judicial administration of the law has repeatedly treated the word as having a broader significance and recognized coverage under the statute where workmen were engaged in drilling operations before the completion of the well.

We entertain the view that a liberal and practical view of the law places the claimant within the field of covered employments, and as we have noticed, such view does not strain the meaning of the language used beyond its accepted import.

After all, the purpose of the law is to place upon hazardous industries the burden of the hazards of the industry. While actual hazard does not control in determining the coverage of the statute, it does impel the reflecting mind to search the language of the statute for wording indicating a legislative intent to cover the employment and to interpret words appearing in the statute in such a manner as to accomplish the general purpose of the act, if such an interpretation can be accomplished without forcing the words of the statute beyond the recognized scope of their meaning.

Working on a seismograph crew, where power-driven machinery and explosives in use are constant companions, is obviously fraught with actual hazard. The nature of the work is comparable in mechanics and hazard to drilling oil wells, mining and other industries more clearly and explicitly within the act.

There is no rational ground for supposing the Legislature would intentionally exclude seismograph crews while including comparable employments, and since the language of the statute is broad enough to cover them, we decline to exclude them by judicial interpretation.

We are therefore of the opinion, and hold, that claimant was engaged in one of those hazardous employments falling within and covered by the Workmen's Compensation Law.

It is next contended by the petitioner that the evidence was insufficient to constitute the basis of an award.

It is specifically urged in this connection that there is an absence of medical testimony showing that claimant's disability was attributable to accidental injuries sustained on June 10, 1941, and July 23, 1941.

With reference to the accident of July 23rd, claimant testified that while carrying down hill five geophones weighing about 75 pounds, he fell on some large rocks. His fall caused him to feel numb all over like he was paralyzed. He was picked up by his fellow workers and placed on a truck. Later a car came after him and he was sent to Bristow, Okla., near which city he was working at the time. He then went to Tulsa and to a hospital. He was paid compensation but was requested by petitioner to move to another hospital, being threatened with a cessation of compensation benefits if he did not. He was discharged from the latter hospital on August 24, 1941, and payment of compensation stopped.

The testimony with reference to his prior injuries is not as specific as that above outlined referring to the last one.

The medical testimony reflects that claimant is suffering from osteo-arthritis. Medical testimony also appears in the record supporting the view that this condition is attributable to the accidental injuries, more particularly the one received on July 23, 1941. To illustrate, one doctor testified in part with reference to the cause of claimant's condition:

"A. June of 1940, yes, I think that

was the start of it, he received a minor injury then. Possibly if he had stayed off work longer and had more extensive treatment he might have had a complete recovery, but he tried to work off and on, and I think he tried to work when he shouldn't have tried to work. Q. Well, isn't it true then—A. And then he received more or less one injury on top of another; he was still able to go ahead and do his work with some handicap, but I think possibly, in my opinion, the last injury he received there, I believe it was in 1941, July 23, 1941, the last one, *I think that is the injury that aggravated the others and caused it to become acute and flare up and incapacitate him."* (Emphasis ours.)

We shall not burden this opinion with an analysis of all of the medical testimony. It is sufficient to say that from our examination thereof as well as our survey of the testimony on other features of the case, the existence of competent evidence to support the award cannot be successfully denied.

The claimant did not give written notice of his injury as contemplated by 85 O. S. 1941 § 24. However, the commission excused such failure on the statutory ground that the petitioners were "not prejudiced" by such failure and that they had actual notice.

The petitioners assert that the finding of the commission excusing written notice was erroneous and unwarranted. We find nothing in the record which would justify us in determining that the petitioners were prejudiced by the failure to give written notice. The finding of the commission on this phase of the case should be, and is, approved.

The proceedings before the commission are free from substantial defect, and the award is affirmed.

CORN, C. J., and RILEY, OSBORN, BAYLESS, and HURST, JJ., concur. ARNOLD, J., concurs in conclusion. GIBSON, V. C. J,. and WELCH, J., dissent.