JOE HEILIGER, Appellant, v. CITY OF SHELDON et al., Appellees.

No. 46616.

APRIL 3, 1945.

Diamond & Jory, of Sheldon, for appellant.

Miller, Huebner & Miller, of Des Moines, for appellees.

BLISS, J.— The facts have been settled by stipulation. The City of Sheldon has a population of less than five thousand and, under the authority of Code section 5766, it adopted and made effective an ordinance organizing a fire department, to consist of not more than fifteen active members and certain special members, all to be appointed by the council upon the taking effect of the ordinance, with additional members thereafter to be named by the fire chief, subject to the approval of the council. All officers are chosen from the active members, such officers being a fire chief, appointed by the council, and an assistant fire chief and other officers, appointed by the chief, subject to the approval of the council. For cause the chief may be removed by the council, and any other member or officer may be removed by the chief for like cause, subject to the approval of the council. The chief, and, in his absence, the assistant chief, has full charge and authority at all fires, over all members and officers, and the latter are required to "perform such duties at or in connection with such fires as may be designated by the Fire Chief or Assistant Fire Chief then in charge." The ordinance provides that the compensation of the chief shall be $180, and that of the assistant, $50 a year, "and of all members * * * answering roll call for each and every alarm of fire shall be the sum of Two ($2.00) Dollars for the actual attendance and work at or in connection with any fire within the City," the chief and assistant being entitled to the same in addition to their yearly pay. The chief is required to keep a suitable book record of the names, ages, and residences of all members, and their fire attendance.

The appellant was injured at a fire on June 1, 1943, as a result of which he was totally and temporarily disabled for a

period of eight weeks, and incurred medical expense of the reasonable value of $85. The award of the deputy commissioner, adopted by the commissioner, was for eight weeks' disability at $15 a week, and for medical services in the sum of $85.

The record of appellant's becoming a member of the fire department is as follows:

"December 14, 1931, at a regular meeting of the City Council of the City of Sheldon, Iowa, Fire Chief Hons proposed the names of * * * and Joe Heiliger as additional members of the Fire Department and asked approval of their membership."

Motion for their approval having been made and seconded and the roll called, the record continues:

"All present voting in the affirmative, the motion is declared carried and their membership approved and accepted."

The appellant continued as such active member until his injury. There was no other arrangement or proceeding had between appellant and the city with respect to appellant's becoming or continuing a member of the fire department. There was no formal contract, oral or written, setting out the terms of the relationship, the duration thereof, the compensation, or the duties, obligations, or rights of appellant. During the year preceding the injury appellant attended twenty-seven fires, for which he received $54, being the same attendance and remuneration as that of the other members, except the chief and his assistant received their yearly remuneration in addition. This remuneration of the members and the chiefs was as much as or more than that received by members and chiefs of other such or similar fire departments in the vicinity of Sheldon. At the time of the injury, and before and after, the appellee casualty company was the workmen's-compensation insurance carrier for the city, under a standard policy, as required by statute. In computing the premium paid on the policy in force at the time of the injury, and on policies issued before and after that time, the remuneration paid the members of the fire department was not taken into consideration, or counted as a part of the pay roll of the city, or earnings of the employees thereof.

Assuming and believing volunteer firemen were not covered

by the Workmen's Compensation Act, the city purchased of the appellee casualty company such an accident policy as is authorized by section 5767.1 of the 1939 Iowa Code, which policy was in effect at the time of the injury to appellant. Under said policy the insurance carrier has paid appellant the benefits he was entitled to thereunder for his injuries.

The city had no such "firemen's pension fund" as is mentioned in Code section 1361(4).

It was also stipulated that the salary of the marshal of Sheldon for the year next preceding the day of the injury was $1,650, to which the appellees objected as being incompetent, irrelevant, and immaterial and not a proper basis or criterion for computing a rate of compensation for appellant.

Appellant relies for reversal upon three assigned errors which may be condensed into the complaint that the court erred in holding he was not an employee of the city, under contract, within the meaning of the compensation act, and particularly Code section 1421(2), and further erred in holding appellant was an "official" of the city under subdivision 3d of said section 1421, and therefore excluded from the act.

Attorneys for appellant state:

"We must confess that it is a difficult proposition to write an argument inasmuch as this is a case of first impression so far as the Iowa courts are concerned, and we have been unable to find any authorities from other states sustaining our contention."

They concede that there was no express contract between appellant, as a member of the volunteer fire department, and the city, as his employer, but contend that an implied contract of employment can be read into the ordinance we have summarized and the proceedings had thereunder in the acceptance of appellant as a fireman.

They also contend that it is to be inferred from Code section 1361(4) that firemen, of the class of appellant, not entitled to benefits from a "firemen's pension fund," are within the protection of the compensation act, their argument being that if, as urged by appellees, no firemen are within the coverage of the act, it was unnecessary to specifically provide that firemen entitled to pension benefits were not covered by the act.

The particularly pertinent sections of the act relied on by the parties are:

"1361 To whom not applicable. This chapter [chapter 70, Workmen's Compensation] shall not apply to: * * * 4. As between a municipal corporation, city, or town, and any person or persons receiving any benefits under, or who may be entitled to benefits from, any 'firemen's pension fund' or 'policemen's pension fund' of any municipal corporation, city, or town, except as otherwise provided by law.

"1362 Compulsory when. Where the state, county, municipal corporation, school district, or city under any form of government is the employer, the provisions of this chapter for the payment of compensation and amount thereof for an injury sustained by an employee of such employer shall be exclusive, compulsory, and obligatory upon both employer and employee, except as otherwise provided in section 1361."

Section 1390, which has to do with the compensation schedule, provides that compensation shall be upon the basis of sixty per cent of the average weekly earnings but not to exceed fifteen dollars "nor less than six dollars per week, except if at the time of his injury his earnings are less than six dollars per week, then he shall receive in weekly payments a sum equal to the full amount of his weekly earnings."

"1397 Basis of computation. * * * 5. In case of injured employees who earn either no wages or less than three hundred times the usual daily wage or earnings of the adult day laborer in the same line of industry of that locality, the yearly wage shall be reckoned as three hundred times the average daily local wages of the average wage earner in that particular kind or class of work; *or if information of that kind is not obtainable, then the class most kindred or similar in the same general employment in the same neighborhood.* [Italics are ours.]

"1421 . Definitions. * * * 1. 'Employer' includes and applies to any person, firm, association, or corporation, state, county, municipal corporation, city under special charter and under commission form of government, school district, and the legal representatives of a deceased employer. 2. 'Workman' or 'em-

ployee' means a person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship, for an employer, except as hereinafter specified. 3. The following persons shall not be deemed 'workmen' or 'employees': * * * d. A person holding an official position, or standing in a representative capacity of the employer, or an official elected or appointed by the state, county, school district, municipal corporation, city under special charter or commission form of government.''

Section 1422. Peace officers. This section provides that any policeman (except those pensioned under the policemen's pension fund created by law), any sheriff, marshal, constable, and all their deputies, and any other legally appointed or elected law-enforcing officer, killed or disabled in the line of his duty, or the dependents of any such officer, shall be entitled to compensation, to be paid out of the general funds of the state:

''Such compensation shall be the maximum allowed in compensation cases. The industrial commissioner shall have jurisdiction as in other cases.''

The appellees, in a well-considered brief and argument, to which appellant has not replied, submit but the one proposition for affirmance, namely, that the trial court was right in holding that appellant was not an employee under subdivision 2 of Code section 1421, but was an ''official'' under subdivision 3d of the same section. They support the main proposition with the following points, to wit:

1. Volunteer firemen are excluded because there is no *contract of service*.

2. Appellant's relationship was by *appointment* and *election to membership* and not by contract.

3. Volunteer firemen are excluded because they are *appointed officials* or *hold official positions*.

4. No firemen are included by jurisdictional exclusions of section 1361(4).

5. Fireman at least holds ''official position'' or is an ''official,'' which are broader terms and include more than ''officer.''

6. Giving bond or taking oath is not a prerequisite to being an official or holding official position.

7. Cases cited by commissioner are clearly distinguishable.

8. Commissioner Funk's long-followed construction excluding volunteer firemen is presumed satisfactory to legislature.

I. Whether the appellant is excluded from the coverage and protection of the Workmen's Compensation Act of this state, on the theory that he was under no contract of service, is a matter which is open to fair argument. There is something to be said on both sides of the proposition. There is no express determination of the matter in the act. Subdivisions 1 and 2 of Code section 1421, supra, broadly define the words, ''employer,'' ''workman,'' and ''employee.'' This court and courts generally have uniformly held that workmen's-compensation acts should be liberally interpreted in the light of their purpose, so far as reasonably may be done, to effect the accomplishment of their beneficent design. Garrison v. Gortler, 234 Iowa 541, 548, 13 N. W. 2d 358, 361, and cases cited.

We have held that an employer or employee is ordinarily within the act unless it expressly excludes him. In Gardner v. Trustees of M. E. Church, 217 Iowa 1390, 1393, 250 N. W. 740, 741, the court quoted with approval from the commissioner's award, as follows:

'' 'We are now assuming that the statute means what it says in imposing compensation obligation on every actual employer, *except in employments specifically excluded from the operation of the law.' ''* (Italics ours.)

And in Crooke v. Farmers' Mutual Hail Ins. Assn., 206 Iowa 104, 107, 108, 218 N. W. 513, 514, 62 A. L. R. 342, the court said:

''Some workmen's compensation laws are specifically limited to hazardous or extra-hazardous employments, and the particular case must be brought within the statute. *Ours is drafted on the reverse theory, of entitling to the benefit of the act employees other than those which the legislature has excluded.''* (Italics ours.)

The only firemen who are expressly excluded from the pro-

visions of the compensation act are those entitled to receive benefits from any "firemen's pension fund." The City of Sheldon had no such pension fund. Exclusions will not be read into workmen's-compensation statutes where they do not expressly appear. Horovitz on Workmen's Compensation (1944), 225. "Exclusion by legal construction and expansion defeats the humane attempt to protect injured workers and their dependents under workmen's compensation acts." Horovitz on Workmen's Compensation, 236. See, also, Seismograph Service Corp. v. Mason, 193 Okla. 623, 145 P. 2d 967.

Appellees argue that no contract existed between appellant and the city because he was "appointed," "elected," or "accepted" as a fireman and was not "employed" by contract. We are not disposed to attach much weight or importance to nomenclature or terminology in a question of this kind. This court has held in compensation cases that, "The question is not primarily one of language * * *," McKinley v. Clarke County, 228 Iowa 1185, 1189, 293 N. W. 449, 451, and "that the mere designation of claimant's office does not determine his status. * * *" Hjerleid v. State, 229 Iowa 818, 826, 827, 295 N. W. 139, 143. "Courts look behind the legal terminology to discover and expose the real relationship between the parties as regards the question of the failure to obtain compensation coverage." Horovitz on Workmen's Compensation, 219, 229. See, also, Montello Granite Co. v. Industrial Comm., 227 Wis. 170, 278 N. W. 391.

The appellant offered himself to the city as one to perform the services and duties of a fireman, and the city accepted the offer. These are the usual basic elements of a contract. He performed those services and duties for ten or more years for a wage or compensation provided by ordinance.

II. Appellees also insist that appellant was not an employee, and was excluded from the benefits of the act because he was an "official" of the city, "appointed" to and holding an "official position," which terms are broader and more inclusive than the term "officer." This contention is based upon the exception to subdivision 2 of section 1421, supra, set out in subdivision 3d of said section. We may here note that a statutory

exception must be strictly construed so as not to encroach unduly upon the general statutory provision to which it is an exception, since the rule is broader than the exception and any doubts or implications should be solved in favor of the rule and against the exception. See Eddington v. Northwestern Bell Tel. Co., 201 Iowa 67, 72, 202 N. W. 374, 377; National Cast Iron Pipe Co. v. Higginbotham, 216 Ala. 129, 112 So. 734, 736; Garrison v. Gortler, supra, 234 Iowa 541, 549, 13 N. W. 2d 358, 361, 362, and cases cited.

The term "public officer" or "public official" has received broad, narrow, and widely varying definitions by numerous courts. One may find a definition which will fit almost any particular instance. In State v. Spaulding, 102 Iowa 639–650, 72 N. W. 288, Kinne, C. J., in a well-considered and often-cited opinion, listed many of these definitions. An eminent author has said:

"The words office and officer are sometimes of uncertain import. They have been defined in various terms. As before stated, in the several relations in which they are used **different** elements may be involved. Therefore, in order to determine the meaning of these words in a given case regard must be had to the intent and subject matter of the law wherein they are employed. In ascertaining their meaning technical rules should be avoided, and courts should not be too precise in seeking for words and definitions." 2 McQuillin, Municipal Corporations, section 436.

This court on a number of occasions has discussed the essentials and matters commonly attached to public office and those occupying the position. See State v. Spaulding, supra, 102 Iowa 639, 642, 72 N. W. 288; McKinley v. Clarke County, supra, 228 Iowa 1185, 1187, 293 N. W. 449, 450; Whitney v. Rural Ind. Sch. Dist., 232 Iowa 61, 66–72, 4 N. W. 2d 394, 140 A. L. R. 1376; Danico v. Davenport Chamber of Commerce, 232 Iowa 318, 326, 327, 5 N. W. 2d 619; Hutton v. State Conservation Comm., 235 Iowa 52, 54, 16 N. W. 2d 18, 19. Among the essentials of public office there noted are the delegation to the office and its occupant of some of the sovereign functions, powers, duties, and trusts of government, the authority to direct, supervise, to per-

form duties with more or less independence of superior control. There is entrusted to the office and the officer a portion of the sovereign power of government.

The appellees rely strongly upon and quote at length from McDonald v. City of New Haven, 94 Conn. 403, 407, 109 A. 176, 177, 10 A. L. R. 193, a decision holding that under the compensation act of that state firemen were not covered, since they were "appointed" officers of the municipality, and not employees thereof, and were performing "governmental" duties. The opinion states:

"It is not necessarily the character of the service undertaken, but rather how the service is secured by the municipal corporation, which determines whether the person injured is within the terms of our Act."

The reasons given are not persuasive to us. The responsibility of the position, the character of its duties and work, and the latitude in and the manner of their performance are of prime consideration in determining the matter. As said in Cornet v. City of Chattanooga, 165 Tenn. 563, 567, 56 S. W. 2d 742, 743, in which a policeman was held to be a civil officer:

"*It is not the method by which he becomes a member of the police force which fixes his status, but because of the nature and extent of the duties and responsibilities with which he is charged * * *.*" (Italics ours.)

The fact that the work is "governmental," or for the benefit of the public, carries little weight. Under the compensation act of Iowa and the acts of the states generally the employees of the state and of its political subdivisions are within the protection of the act.

In criticizing the McDonald case and like decisions, the Court of Appeals of California, in Mason v. City of Los Angeles, 130 Cal. App. 224, 229, 20 P. 2d 84, 87, said:

"While the cases so holding are the majority in number, in our opinion the minority cases have the greater weight of authority. * * * Undoubtedly if it were not for the firemen the department would not perform its public function of protect-

ing the combustible property of the city; but in our opinion it does not necessarily follow, because of that, that they are holding public offices. * * * Carried to its logical conclusion, such an argument as that presented here would make a public officer of every person, however menial his duties, employed in a department of the municipality, to whom the charter has given certain functions to perform for the public benefit, because he is appointed, his position is created, and his wages or salary is fixed, by law. He may hold his position by a certain tenure, under civil service or charter provision, and be doing a public service by laboring in such department, but that alone certainly does not make him a public officer. As the then Justice Cooley * * * said in the case of Throop v. Langdon, 40 Mich. 673, 682, 'the officer is distinguished from the employee in the greater importance, dignity and independence of his position'; and, he might have added, 'in the authority to direct and supervise, either expressly given him by the law creating the office or necessarily implied'—which, of course, must need the assistance of others not having any of those distinguishing characteristics, or there would be none to direct and supervise in carrying out the responsibility fixed by law on such officer.''

In the Mason case, supra, as in the case before us, the claimant, under the authority of the act creating the fire department, was under the direction and control of superiors *"in charge"* of extinguishing the fire.

The Mason case, on this point, was cited with approval in Olson v. City of Superior, 240 Wis. 108, 110, 2 N. W. 2d 718, 719, which held that a pipeman in the fire department was not a public officer of the city. The court said:

"In Martin v. Smith, 239 Wis. 314, 332, 1 N. W. (2d) 163 [172], we said,—after quoting with approval the definition of public officers in State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 Pac. 411, [53 A. L. R. 583],—'It is certain that a person employed cannot be a public officer, however chosen, unless there is devolved upon him by law the exercise of some portion of the sovereign power of the state in the exercise of which the public has a concern.' As it does not appear that the exercise of any such power has devolved upon or been delegated to the sub-

ordinate members of defendant's fire department, who were employed as pipemen, neither plaintiff * * * or any of the other pipemen were public officers. That conclusion is in accord with the weight of authority on this subject." (Citing supporting authorities.)

In McNally v. City of Saginaw, 197 Mich. 106, 112, 163 N. W. 1015, 1017, speaking of the decision in Blynn v. Pontiac, 185 Mich. 35, 151 N. W. 681, the court said:

"It was not held and could not in reason be contended that all persons in the service of a city in any capacity, regardless of the nature of their duties, could be made officers within the meaning of the act by appointment of the city council or commission, and a requirement that they take an oath of office. * * * To indiscriminately classify all men in the fire department as officers would be an anomaly which is recognized in the city ordinance upon that subject and which the statute cannot be reasonably construed as contemplating."

In State ex rel. Hyland v. Baumhauer (State ex rel. Mantell v. Baumhauer), 244 Ala. 1, 8, 12 So. 2d 326, 330, answers were given to certain questions certified to the supreme court by the court of appeals. Among the questions was one asking whether a fireman of the city of Mobile was a public officer within the contemplation of the rule rendering void his agreement to perform the services required of him for less compensation than that fixed by the statute. The supreme court gave a negative answer. After referring to other decisions of the court that a fireman was not an officer, the court said:

"Our problem is not strictly one of whether the person in question is an officer as defined by some of the cases for certain purposes, but whether a fireman of a city fills a place of public trust, involving a performance of public duties which are a part of the sovereignty of the State or city. It is such a person who is prohibited by our public policy to trade and traffic in and about the compensation fixed by law. * * * The duties of a fireman are of an important public sort, *but there is vested in such service no element of trusteeship possessing an ingredient of sovereignty. He handles no public funds, and discharges no*

*duty which sovereignty is bound by law to discharge. He is not a public officer as ordinarily defined.* 42 Amer. Jur. 882, §4.'' (Italics ours.)

With respect to the contention of the appellees that appellant, if not an ''officer,'' was in a broader sense an ''official,'' under the authority of Ex parte Momo Tomimatsu, D. C., Cal., 232 F. 376, the Louisiana Supreme Court, in Hall v. City of Shreveport, 157 La. 589, 594, 102° So. 680, 682, where a like argument was made, had this to say:

''We do not think any such finespun distinction was in the minds of the lawmakers when they enacted the Compensation Statute. Obviously, there could not have been, because there is no distinction in the ordinary and legal use of the words. The word 'official' has been defined to mean 'one who is invested with an office of a public nature.' Century Dict. See, also, to the same effect, Standard Dict. * * * And Black's Law Dict. defines 'official' to be an 'officer, a person invested with the authority of an office.' See, also, 29 Cyc. 1471, the word 'official' when used as a noun means 'an officer.' ''

The holding is a complete answer to this contention of appellees.

As noted by appellees, the decisions cited by the commissioner in support of his award—Stevens v. Village of Nashwauk, 161 Minn. 20, 200 N. W. 927; Sonnett v. Stowe Twp., 100 Pa. Super. 397; State ex rel. Smith v. Industrial Comm., 127 Ohio St. 217, 187 N. E. 768—were made under compensation acts expressly covering firemen. However, the Minnesota court had held, long before the word ''firemen'' appeared in the compensation act, and under statutory provisions in substance like those of the Iowa act, that firemen were entitled to the benefits of the Minnesota compensation act. See State ex rel. City of Duluth v. District Court, 134 Minn. 28, 158 N. W. 791, Ann. Cas. 1918B, 635; Segale v. St. Paul City Ry., 148 Minn. 40, 180 N. W. 777; Behr v. Soth, 170 Minn. 278, 212 N. W. 461, 462.

Some of the authorities cited by appellees also do not support their contentions. Of these authorities, City of Fort Wayne v. Hazelett, 107 Ind. App. 184, 23 N. E. 2d 610, was overruled

by the supreme court April 6, 1942, in City of Huntington v. Fisher, 220 Ind. 83, 85, 40 N. E. 2d 699, 700, holding that the widow of a fireman was entitled to compensation, reversing the court of appeals, 39 N. E. 2d 487. The court, after noting that it had consistently held firemen and policemen to be employees and not public officers, said:

"The fact that, under these decisions, firemen and policemen were declared to be employees, and that they were not expressly excluded from the operation of the Workmen's Compensation Law, tends to negative the conclusion that it was not intended to apply to them. Nor can we agree that the fact that the city acts in a governmental capacity, and that the manner of hiring and discharging firemen is regulated by statute, and that a pension system is provided for firemen, furnishes a basis for concluding that it was not intended that they should come within the terms of the compensation law. The State is included within the definition of employer, and it acts in a governmental capacity, and the manner of its employment and discharge of employees is regulated by statute * * *."

The Indiana Compensation Act does not expressly include firemen in its definition of "employee." Adkinson v. City of Port Arthur, Tex. Civ. App., 293 S. W. 191, cited by appellees, holding that a fireman of the defendant was not within the compensation act, has no application, since the decision is based on the fact that the act does not apply to cities and towns. City of Macon v. Whittington, 171 Ga. 643, 156 S. E. 674, holding a fireman killed in the course of duty was not within the act, really bases its decision on the fact that it did not appear that the status of the fireman had been defined as either that of an officer or of an employee. It approved the reasoning in McDonald v. New Haven, supra, 94 Conn. 403, 109 A. 176, 10 A. L. R. 193, but noted, as does also Lake v. City of Bridgeport, 102 Conn. 337, 128 A. 782, that, at the session of the general assembly next following the decision in the McDonald case (section 11, chapter 306, Public Acts of 1921), the compensation act was amended to include any salaried officer or paid member of any police or fire department, "irrespective of the manner in which

he is appointed or employed.'' [Gen. Stat. of Conn., Rev. of 1930, section 5223.]

While the fact that appellant did not take an oath or give a bond is not controlling in determining his status as an officer it is a persuasive consideration, as evidenced by the frequent mention of these matters in the decisions of this court. See McKinley v. Clarke County, supra, 228 Iowa 1185, 1189, 293 N. W. 449; Roberts v. Colfax, 219 Iowa 1136, 1141, 260 N. W. 57; State v. Spaulding, supra, 102 Iowa 639, 72 N. W. 288; State v. Conway, 219 Iowa 1155, 1159, 260 N. W. 88; Schroyer v. Jasper County, 224 Iowa 1391, 1394, 279 N. W. 118; Whitney v. Rural Ind. Sch. Dist., supra, 232 Iowa 61, 71, 4 N. W. 2d 394, 140 A. L. R. 1376.

The appellant here was an ordinary fireman, one of those who did the heavy work: handling the equipment, hose, ladders, axes, etc. He was under the chief or assistant chief. He was entrusted with none of the powers or functions of the sovereign. If we hold that he was an ''official'' of the City of Sheldon, we would have to say that those performing the humblest service for any municipality were its officials. We have no hesitation in holding that appellant was not an official within the intendment of Code section 1421(3d).

Though the case was not one involving the Workmen's Compensation Act, this court recently held that paid firemen of the city of Burlington were employees and not public officers. Glaser v. City of Burlington, 231 Iowa 670, 676, 677, 1 N. W. 2d 709. See, also, Murphy v. Gilman, 204 Iowa 58, 60, 214 N. W. 679, 681, where the court, after referring to section 1361(4), supra, (excluding from the compensation act those entitled to the benefit of firemen's-pension funds), said:

''If firemen were not employees, they were excluded without such express provision.''

Appellees have also cited several cases in which it has been held that municipalities were not liable for the torts of policemen, firemen, and others performing governmental duties, the reason sometimes given being that they were not ''employees'' or ''servants'' but ''officers.'' Such reason is not a sound one, since the immunity of the municipality is not because of the

status, grade, or rank of the tort-feasor but the governmental nature of the service being performed when the tort occurred. As noted in McNally v. City of Saginaw, supra, 197 Mich. 106, 113, 163 N. W. 1015, 1017:

"Conceding that the city is performing a governmental function in furnishing its citizens fire protection, and is therefore not liable in damages for negligence while in the discharge of such function, its immunity from liability in that particular is not contingent on whether its agents in the service are called officers or employees."

This court, in McFadden v. Town of Jewell, 119 Iowa 321, 323, 93 N. W. 302, 60 L. R. A. 401, 97 Am. St. Rep. 321, noted that it was immaterial in such situation whether the tort-feasor was an employee or an officer. The authorities cited by appellees, to wit, Saunders v. Fort Madison, 111 Iowa 102, 82 N. W. 428; Bradley v. City of Oskaloosa, 193 Iowa 1072, 188 N. W. 896; Leckliter v. City of Des Moines, 211 Iowa 251, 233 N. W. 58; Hagedorn v. Schrum, 226 Iowa 128, 283 N. W. 876, and McFadden v. Town of Jewell, supra, therefore do not aid appellees.

There is another reason why the decisions of tort cases and the definitions of the common law therein should not be followed too closely in compensation cases. The Workmen's Compensation Act is a complete departure from the common law with respect to liability for injury. It is a revolt therefrom and the creation of a complete substitute therefor and not a mere improvement therein. Ahmed's Case, 278 Mass. 180, 179 N. E. 684, 79 A. L. R. 669; Horovitz on Workmen's Compensation, 7, 8. These acts create a statutory relation between the employer and employee. Bradford Electric L. Co. v. Clapper (Brandeis, J.), 284 U. S. 221, 52 S. Ct. 118, 76 L. Ed. 254. In an analogous case, Judge Parker, in United States v. Vogue, Inc., 4 Cir., Va., 145 F. 2d 609, 612, said:

"Common law rules as to distinctions between servants and independent contractors throw but little light on the question involved. The Social Security Act, like the Fair Labor Standards Act, 29 U. S. C. A. §201 et seq., and the National Labor

Relations Act, 29 U. S. C. A. §151 et seq., was enacted pursuant to a public policy unknown to the common law; and its applicability is to be judged rather from the purposes that Congress had in mind than from common law rules worked out in determining tort liability."

See, also, National Labor Relations Bd. v. Hearst Publications (Rutledge, J.), 322 U. S. 111, 64 S. Ct. 851, 855, 88 L. Ed. 1170.

III. Notwithstanding our conclusions as noted in Divisions I and II hereof we are convinced there is merit in appellees' eighth proposition that the General Assembly of Iowa has indicated that the Workmen's Compensation Act as enacted was not intended to cover the appellant or members of municipal fire departments. Such was the construction which Commissioner A. B. Funk, a most efficient and learned administrator of such legislation and deeply interested in giving full effect to its beneficent and humanitarian purposes, placed upon the act during the many years of his administration. In compliance with Code section 1432, requiring the commissioner to biennially report to the governor for transmission to the first general assembly in session thereafter any recommendations for change or amendment of the Workmen's Compensation Act, he made a report to Governor Hammill in 1930 and to Governor Turner in 1932. The report in 1930, on page 16 thereof, stated:

"COVERAGE FOR VOLUNTEER FIREMEN.

Under the ordinary application of the compensation service it is necessary to hold that our law does not afford coverage to volunteer firemen in case of injury in service. The fundamental contract of employment is wanting and there is no showing of earnings upon which to base weekly payment. Grievous sacrifice on the part of public spirited citizens who sustain injury or who meet with death in lending their service to the reduction of community fire losses strongly appeals for recognition and relief at the hands of the general assembly.

It is therefore recommended that specific provision be made to extend compensation coverage to volunteer firemen in case of injury or to their dependents when death shall occur. Payment

should be in the maximum legal amount of $15.00 a week, such payment to be met by the municipality or its insurance carrier.''

In his 1932 report, on page 8, the commissioner said:

## ''Volunteer Firemen.

There is frequent inquiry at the Department as to the relation of this class of service to compensation. It is necessary to say in reply that no coverage exists under the law because between the city and the volunteer firemen there is no contract of employment and no wage basis upon which to compute payment. In our 1930 report there was strong recommendation for special legislation in relief of this unfortunate situation which seemed to attract little attention either at the State House or about the state. This was a matter of surprise in view of grievous experience.

The volunteer fireman is a factor of great importance in community affairs. He offers his services in emergency for the protection of property public and private practically without pay or hope of award. He is an able bodied man, usually of modest means. If he is injured in this patriotic service he bears all the burden and if he loses his life it is just too bad for his wife and children who give their comfort and perhaps their hope for the future in return for funeral flowers, a laudatory obituary and empty condolence. We know about this situation through futile and frantic appeal for aid the law fails to provide when calamity arrives.

This grievous situation demands such legislation as will impose upon the beneficiary of this service the responsibility of assuming liability under workable statute. Compensation insurance may be secured at a cost by no means burdensome. Some insurers now carry policies covering volunteer firemen but they are not required to pay under the present law, and if settlement is proposed there is no basis of calculation.''

We must assume that the respective governors complied with the law and transmitted the recommendations to the general assembly. No legislative action appears to have been taken in response to these recommendations, unless it was the enactment in 1934 by the Forty-fifth Extra General Assembly of section

5767-f1 of the Code of 1935, permitting cities and towns to procure insurance for firemen and their dependents not within the benefits of any firemen's-pension fund, to compensate them for the disability or death of any such fireman caused by injuries arising out of or by his duties as such. The appellant was covered by such a policy issued by the appellee casualty company.

The construction placed upon the compensation act by the commissioner and the settled practice of his office for years are entitled to much weight. See New York Life Ins. Co. v. Burbank, 209 Iowa 199, 216 N. W. 742; John Hancock Mut. L. Ins. Co. v. Lookingbill, 218 Iowa 373, 253 N. W. 604; State ex rel. Pew v. Independent Order of Foresters, 226 Iowa 1339, 286 N. W. 425; State v. Robbins, 235 Iowa 602, 608, 15 N. W. 2d 877, 880.

The subsequent general assemblies apparently acquiesced in this construction and sought to comply with the recommendations made.

Another matter which supports the trial court's judgment is that no section of the compensation act can be fairly or reasonably construed as providing a basis for adequate compensation to a disabled volunteer fireman or to his dependents.

It was the thought of the trial court that as a matter of public policy much could be said in favor of including firemen within the provisions of the Workmen's Compensation Act. We fully agree with this view of the able trial court. Section 5767.1 is not mandatory upon cities and towns. They may comply or not as they wish. Volunteer firemen are usually men of modest means but with a high sense of civic duty. They risk their lives and limbs for the protection of the lives and the property in their communities, at much inconvenience and danger, for a most inadequate compensation. The courage and heroism of firemen has gone into history, and those who are disabled in the public service, and the widows and orphans deprived of their natural protectors and providers, whether officers or in the ranks, are deserving of all the protection and benefit that the Workmen's Compensation Act can give them. Among the states which a rather cursory examination discloses have Workmen's Compensa-

tion Acts expressly covering firemen are California, Michigan, Minnesota, Montana, New Jersey, New York, North Dakota, Ohio, Pennsylvania, and Connecticut.

The judgment is affirmed.—Affirmed.

HALE, C. J., and OLIVER, GARFIELD, MULRONEY, and WENNERSTRUM, JJ., concur.

MANTZ, J., concurs in result.

SMITH, J., concurs in Division III and in result.

MILLER, J., takes no part.