(102 So. 680)

No. 26901.

**HALL et al. v. CITY OF SHREVEPORT.**

**In re JUDGES OF COURT OF APPEAL, SECOND CIRCUIT.**

(Jan. 5, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Officers** ⬥1—**Appointment to public office does not create a contract.**

An appointment to a public office does not create a contract.

2. **Municipal corporations** ⬥180(1)—**Policeman "public officer."**

A policeman is a "public officer" holding his office, not under a contract between himself and municipality, but as a trust from the state.

3. **Municipal corporations** ⬥723—**Responsibility for exercise of powers stated.**

Powers of a municipal corporation are public and private, and, as to the first, municipality represents state discharging duties incumbent on state, and as an agent thereof it becomes representative of sovereignty, and is not answerable for nonfeasance or malfeasance of its public agents, and as to the second, it represents pecuniary and proprietary interests of individuals, and is held to same responsibility as a private corporation.

4. **Master and servant** ⬥346—**Purpose of act is to provide compensation for injured workmen.**

Primary purpose of Workmen's Compensation Act is to provide compensation for workmen injured while employed in certain hazardous trades, businesses, and occupations.

5. **Master and servant** ⬥348—**Compensation Act interpreted in accordance with general understanding of terms.**

Workmen's Compensation Act must be interpreted and applied in accordance with the general and popular understanding of its terms.

6. **Master and servant** ⬥364—**Policeman held to be "official" not protected by Compensation Act; "officer."**

Policeman who was an appointed "officer" under charter of city of Shreveport, Act No. 158 of 1898, §§ 9, 18 (section 21, as re-enacted by Act No. 261, 1916, and section 3, as amended by Act 309 of 1908), *held* to be an "official" within Act No. 20 of 1914, par. 1, § 1, excepting "officials" from operation of Workmen's Compensation Act, and hence plaintiffs were not entitled to compensation for his death; "official" being defined as one who is invested with an office of a public nature, and being used synonymously with "officer."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Officer; Official.]

O'Niell, C. J., and Land and St. Paul, JJ., dissenting.

Proceeding under the Workmen's Compensation Act by Mrs. Tramna Hall and others against the City of Shreveport. Plaintiffs' demands were rejected by the District Court, and they appealed to the Court of Appeals, the judges of which court certified question of law to Supreme Court. Question answered.

Huey P. Long, of Shreveport, for appellants.

B. F. Roberts, of Shreveport, for appellee.

ROGERS, J. This is an action brought under the Workmen's Compensation Law (Act 20 of 1914, and its several amendments) to obtain compensation for the widow and minor children of a policeman who was killed while in the discharge of his duty.

Plaintiff's demands were rejected by the district court, and they appealed to the Court of Appeal of the Second Circuit. The judges of that court, availing themselves of the provisions of section 25 of article 7 of the Con-

stitution, have certified the question of law involved, and asked for instructions.

It is contended on behalf of plaintiffs that the deceased was, at the time of his death, a servant or employee of the city of Shreveport. Defendant, on the other hand, claims that the deceased was an official of said city, and, as such, was expressly excepted under section 1 of the act from its benefits. This is the sole issue presented, and is the one which has prompted the judges of the Court of Appeal to propound to this court the following question, viz.: "Are the plaintiffs entitled to compensation under the statute."

Under paragraph 1 of section 1 of the statute (Act 20 of 1914) the law is made to apply to the following persons, to wit:

"Every person in the service of the state, or of any parish, township, incorporated village or city, or other political subdivision * * * under any appointment or contract of hire, express or implied, oral or written, except an official of the state, or of any parish, township, incorporated village or city, or other political subdivision. * * *"

The deceased was regularly appointed and commissioned as a police officer for the city of Shreveport.

The question, therefore, to be determined is whether he was in the service of the city under an appointment as an employee or as an official. If he was an employee, plaintiffs are entitled to compensation for his death; if he was an official, he was excepted by the express terms of the statute, and plaintiffs are not entitled to a recovery.

Chief Justice Marshall pointed out the distinction existing between an office and a simple employment in the often referred to case of United States v. Maurice, 2 Brock. 96, Fed. Cas. No. 15747, as follows:

"Although an office is 'an employment,' it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to do an act, or perform a service, without becoming an officer. But if a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by government to perform, who enters on the duties appertaining to his station, without any contract defining them, if those duties continue, though the person be changed: it seems very difficult to distinguish such a charge or employment from an office, or the person who performs the duties from an officer."

In Throop v. Langdon, 40 Mich. 673, Mr. Justice Cooley expresses the distinction as follows:

"The officer is distinguished from the employee in the greater importance, dignity, and independence of his position; in being required to take an official oath, and perhaps to give an official bond; in the liability to be called to account as a public offender for misfeasance or nonfeasance in office, and usually, though not necessarily, in the tenure of his position."

[1] The cases are numerous that an appointment to a public office does not create a contract. Sibley v. State, 89 Conn. 682, 96 A. 161, L. R. A. 1916C, 1087; McDonald v. New Haven, 94 Conn. 403, 109 A. 176, 10 A. L. R. 194; 22 R. C. L. 379.

[2] And there is no end of authority that a policeman is a public officer holding his office not under a contract between himself and the municipality, but as a trust from the state. Farrel v. Bridgeport, 45 Conn. 191; Haney v. Cofran, 94 Kan. 332, 146 P. 1027, Ann. Cas. 1917B, 660; Ex parte Preston, 72 Tex. Cr. App. 77, 161 S. W. 115; Woodhull v. Mayor, etc., 150 N. Y. 450, 44 N. E. 1038; Jacksonville v. Allen, 25 Ill. App. 54; Brown v. Russell, 166 Mass. 14, 43 N. E. 1005, 32 L. R. A. 253, 55 Am. St. Rep. 357; State v. Schram, 82 Minn. 420, 85 N. W. 155; Dempsey v. Railroad Co., 146 N. Y. 290, 40 N. E. 867; State v. Painesville, 32 Ohio Cir. Ct. R. 123; Schmitt v. Dooling, 145 Ky. 240, 140 S. W. 197, 36 L. R. A. (N. S.) 881, Ann. Cas. 1913B, 1078; Proctor v. Blackburn, 28 Tex. Civ. App. 351, 67 S. W. 548; McQuillen Mun. Corp., vol. 2, § 424, pp. 940 et seq.; Throop, Public Officers, § 3, p. 4; 28 Cyc. 497.

[3] It is well settled that the powers and

obligations of municipal corporations are two-fold in character: Those that are of a public nature, and those that are of a private nature. As to the first, or public character of its powers and obligations, the municipal corporation represents the state, discharging duties incumbent upon the state. As to the second, or private character of its powers and obligations, the municipal corporation represents the pecuniary and proprietary interests of individuals. In its public character, as the agent of the state, it becomes the representative of sovereignty, and is not answerable for the nonfeasance or malfeasance of its public agents. In its private or proprietary functions it is held to the same responsibility as is a private corporation. Stewart v. New Orleans, 9 La. 461, 61 Am. Dec. 218; Bennett v. New Orleans, 14 La. Ann. 120; City v. Kerr, 50 La. Ann. 413, 23 So. 384, 69 Am. St. Rep. 442; Davis v. N. O. Pub. Belt, 155 La. 503, 99 So. 419, 31 A. L. R. 1303; Solomon v. New Orleans, 156 La. 629, 101 So. 1.

[4] The primary purpose of the Compensation Act is to provide compensation for workmen injured while employed in certain hazardous trades, businesses, and occupations.

In McRoberts v. Zinc Co., 93 Kan. 364, 366, 144 P. 247, 248, it was said:

"In the enactment of the compensation law the Legislature recognized that the common-law remedies for injuries sustained in certain hazardous industries were inadequate, unscientific, and unjust, and therefore a substitute was provided by which a more equitable adjustment of such loss could be made under a system which was intended largely to eliminate controversies and litigation, and place the burden of accidental injuries incident to such employments upon the industries themselves, or rather upon the consumers of the products of such industries."

Where a municipality in its private character is engaged in business enterprises for profit, as electric light or water works plants or in operating street car lines, many reasons might be suggested for including within the provisions of the Compensation Law the workmen engaged in such hazardous employments. In such cases the municipality, like an individual engaged in trade or business, could place the burden of the added cost of service upon the public at large.

But the same reasons would not apply where a municipality is acting in its public character, exercising merely its governmental functions, and those who are employed for such purposes, no matter how hazardous be their work, cannot be brought within the scope or purpose of the statute.

The police officers of a city are not regarded as servants or agents of the municipality. They are conservators of the peace, and exercise many of the functions of sovereignty; they are appointed and paid by the municipality as a convenient mode of exercising the functions of government; they assist the city in the performance of its governmental duties, and not in the discharge of its proprietary obligations. And the municipality is not responsible for their unlawful or negligent acts in the discharge of their duties.

It is contended on behalf of plaintiff, however, that the Compensation Law excepts from its operation only *officials*, and not *officers* of the state, parish, city, etc. And it is said, under this interpretation, the exception applies only to the usual officials of the city, such as the mayor, superintendent of streets, park commissioner, city treasurer, city clerk, city attorney, and members of the common council.

We do not think any such finespun distinction was in the minds of the lawmakers when they enacted the Compensation Statute. Obviously, there could not have been, because there is no distinction in the ordinary and legal use of the words. The word "official" has been defined to mean "one who is invested with an office of a public nature." Century Dict. See, also, to the same effect, Standard Dict. An "officer" (specifically) is "a person holding a public office under the national,

state, or municipal government." Century Dict. verbo "Officer" (2). And Black's Law Dict. defines "official" to be an "officer, a person invested with the authority of an office." See, also, 29 Cyc. 1471, the word "official" when used as a noun means "an officer."

The charter of the city of Shreveport (Act 158 of 1898) in section 18 gives the city council the power to organize, appoint, uniform and commission the police force, and to appoint as many *officers* as may be necessary, to fix salaries and compensation for such *officers* and other *employees* elected or appointed by them under the restrictions set forth in the act. It will thus be observed that the distinction is recognized between the police officers and the other employees connected with the police force.

Nowhere in the charter is the word "official" used to designate any of the persons, from the mayor downward, who are named to administer the affairs of the city. The word "officer," however is employed numerously for such purpose.

Section 9 of the act makes it the duty of the mayor to report to the council all *officers* and employees who shall fail to perform their duty, etc. Section 17 prohibits any trustee, *officer* of the city, etc., from being interested in any municipal contract. Section 21 (as re-enacted by Act 261 of 1916) provides for the election and compensation of the board of health, and designates that the comm'ssioner of finances and the commissioner of streets and parks shall be ex officio members of said board, and then reads: "All of which *officers* shall hold their respective *offices*," etc. (Writer's italics.)

[5] If, therefore, an "official" is something different and distinct from an "officer," we find that the exemption of the Compensation Law would be inapplicable to the city of Shreveport, which, under the express language of its charter, would be governed by officers, and not by officials. No such construction can be placed upon the statute, which must be interpreted and applied in accordance with the general and popular understanding of the terms.

That the words official and officer are popularly understood to be synonymous is strikingly shown by the charter of Shreveport and its amendments themselves.

It is provided by section 3 of the original charter (Act 158 of 1898) that the affairs of the municipality shall be vested in a mayor and trustee, etc. In the marginal note explanatory of the section, the words "municipal officers" are used. When this section was amended by Act 309 of 1908 the marginal note was written "municipal officials." While the marginal notes are no part of the statutes, they indicate how the functionaries referred to in the section were regarded by those charged with preparing the statute for the public printer, and that they were deemed to be sufficiently described either as officers or officials; the terms being synonymous.

And the text-writers uniformly speak of the governing authorities of a municipality as officers, and not as officials. "In this country the charter or constitution of the corporation usually provides with care as to all the *principal officers*, such as mayor, aldermen, marshall," etc. Dillon Mun. Corp. (3d Ed.) vol. 1, § 207, p. 233.

In Blynn v. City of Pontiac, 185 Mich. 35, 151 N. W. 681, the Supreme Court of Michigan was called upon to interpret a compensation statute identical in terms with the Louisiana law in connection with a claim for compensation made by the widow of a policeman who was killed while on duty. The court, in a well reasoned opinion, held that a policeman was an officer of the city, and not a mere employee, and as such came within the exception applicable to an *official* of the state, city, etc. This is the only case to which we have been referred, or which we have been able to find after an exhaustive research, that is exactly in point. None of the cases

cited by counsel for plaintiff is applicable. In each of said cases there are facts differentiating it from the present one.

While a policeman in the performance of his duties is, undoubtedly, at times placed in a dangerous and hazardous situation, and there may be many good reasons why he should be put under the protection of the Compensation Law, this presents a question for the legislative, and not for the judicial, department of the government.

The Legislature has, by Act 290 of 1914, provided for the pensioning of disabled or retired policemen, the widows, minor children, and dependent mothers of deceased policemen, which may be the reason it has not seen fit to place the beneficiaries mentioned in this act under the provisions of the Compensation Statute.

[6] Being satisfied that a policeman is an appointive officer (official) under the provisions of the charter of the city of Shreveport, it follows that he falls within the exception of paragraph 1, § 1, Act 20 of 1914, and our answer to the question propounded is that plaintiffs do not come within the provisions of the act, and are not entitled to compensation thereunder.

O'NIELL, C. J., and LAND and ST. PAUL, JJ., dissent.