DORÉ, Judge.
During the night of March 11, 1950, at some time apparently between 2 and 4 a. m., Alexson Courville was attacked and *447 shot by some party or parties unknown; he died within a few hours without regaining consciousness. For about a year prior to this shooting he had been night watchman for the Town of Basile, and during the night of his death had been performing his duties as watchman. The attack and shooting occurred on one of the streets of Basile, not far from the railroad track and depot. No witnesses were ever found, and the crime was never solved. His widow sought compensation for herself and a minor son from Globe Indemnity Company, which company had in force a Standard Workmen’s Compensation policy issued to the Town of Basile which was designed to cover all the' employees of the town. The insurer denied liability on the ground primarily that the deceased was not an employee but was an official of the town and thus not covered by the provisions of the compensation law, LSA-R.S. 23:-1021 et seq. After defendant’s exceptions were overruled and the case heard on the merits the trial court rendered judgment for plaintiff, awarding her, for her own use and the benefit of her minor son, $14.35 per week (the amount prayed for) for 300 weeks, plus $300 for burial expenses.
At the time of decedent’s death the compensation act contained the following provision relative to coverage of employees' or officers of the state and political subdivisions :
“The provisions of this Chapter shall apply to every person in the service of the state or political subdivision thereof, or of any incorporated public board or commission authorized to hold property and to sue and be sued, under any appointment or contract of hire, express or implied, oral or written, except an official of the state or other political subdivision thereof or of any such incorporated public board or commission; and for such employee and employer the payment of compensation according to and under the terms, conditions, and provisions set out in this Chapter shall be exclusive, compulsory, and obligatory; ' * * (Italics supplied.) LSA-R.S. 23:1034.
■ This case would probably pose no problem for the layman, for very few would ever think of a night watchman as a public official. However, in legal fields the term “official” or “officer” has been given a very broad meaning; and this has prevailed both outside and in Louisiana. In 1925 our Supreme Court had presented to it the question of whether a policeman in the City of Shreveport was in the service of the city as an employee or as an official. If he was an employee, the compensation act covered him; ■ if he was an official, he was expressly excluded from coverage by the terms of the act quoted above. The court held, Hall v. City of Shreveport, 157 La. 589, 102 So. 680, that the policeman was an officer, and so his widow was not entitled to compensation for his death. One of the deciding factors there was the large volume of -authorities from other jurisdictions holding that a policeman holds his position not under a contract between himself and the municipality, but as a, trust from the state. Another factor strongly influencing the court was the distinction generally made between functions of a private nature carried on by political entities and functions of a public nature, the former including such activities as operating water works or electric power plants, where the municipality is engaged in business for profit, and the latter including those functions where the municipality-acts as agent of the state and becomes representative of sovereignty.
Following the decision in the Hall case, this court in 1937 held that a night watchman or deputy for the town of DeQuincy was an officer rather than an - employee, and so not covered by the compensation act. Coleman v. Maryland Casualty Co., La.App., 176 So. 143. There it was found that although the party was called a night watchman, based on the petition his duties were the same as those of a policeman. We said there that the determination of his status was to be based more on the nature of his duties than on the manner of his selection.
We have no quarrel with either of those decisions, based on the particular-facts involved in them. The nature of a. *448 man’s duties is still, we feel, one of the major factors to be considered' in determining whether he is an officer or employee. However, there are still other factors to be considered in the decision, as for example, whether the person is by law designated as officer, see Massenburg v. Commissioners of Bibb County, 96 Ga. 614, 23 S.E. 998; Guthrie Daily Leader v. Cameron, 3 Okl. 677, 41 P. 635;. whether he took an oath of office, Harrington v. State, 200 Ala. 480, 76 So. 422; Coulter v. Pool, 187 Cal. 181, 201 P. 120; and whether he was. required to give bond, McClendon v. Hot Springs Bd. of Health, 141 Ark. 114, 216 S.W. 289. Neither single factor is determinative in itself, not even the question of whether the work done is of a public or ■ private nature. For example, one might be inclined to-say,that a policeman is an officer for the reason that his function deals directly with protecting life and property and keeping the peace; that might seem to be a sufficient reason for classing him as an official. But in metropolitan centers the police departments are jío large that in some instances the departments maintain personnel just to keep the cars and mechanical equipment in good order. The mechanic or “grease monkey”, to use a common term, is not a public “officer” just because ■ his work is necessary in enabling the municipality to perform its . public function of keeping the-peace and protecting life and property. .
In West Virginia it was said that one who merely performs duties required of him by a public' officer under contract, although his employment be in doing public work, is not himself a public officer; but a mere employee or in some instances a public contractor. State ex rel. Key v. Bond, 94 W.Va. 255, 118 S.E. 276. The supreme court of Mississippi, in McClure v. Whitney, 120 Miss. 350, 82 So. 259, decided that the secretary-treasurer of a small agricultural college who is chosen by the Board of Trustees was an employee as distinguished from an officer because his duties and term of office were not fixed by statute but by the Board of Trustees. In Arkansas it was held that the position of road overseer, created by contract, was an employment and not a public office although provision for the employment was made by statute; see Rhoden v. Johnston, 121 Ark. 317, 181 S.W. 128. The supreme court of Alabama found in Compton v. Marengo County Bank, 203 Ala. 129, 82 So. 159, that a depository which received and paid out public funds and paid the county interest on its obligations, but for which no term of office was provided and no qualifications were prescribed, was not a public officer but a contractee. In Florida the supreme court, State ex rel. Holloway v. Sheats, 78 Fla. 583,.83 So. 508, 509, decided that a rural school inspector was an employee and noj; an officer, saying that “The term, ‘office’ embraces the :idea of tenure, duration, and duties in exercising some portion of the sovereign power, con-, ferred or defined by,, law and ,not by contract” and that.“All the duties of a rural school inspector are performed ‘under the direction and advice of the state superintendent of public instruqtion to whom reports shall be made as required.’ These duties do not constitute the rural school inspectors officers, and the statute does not designate them as officers.”
So we feel' that neither the Hall case nor the Coleman case, nor any other one particular case, can furnish an absolute or safe guide by which to determine whether or not a given position is an office or an employment. Every case must necessarily be determined by consideration of the particular facts and circumstances involved. And in' some instances a correct decision can be reached perhaps only by looking further than was done in either'the Hall or the Coleman cases.
In the Coleman case we found that the duties of plaintiff were the same as those of a policeman. But here that is not the case. Dewey Bellon, who was a member of the Town Council before the town ever took out compensation insurance and before Courville was employed, said that Courville was employed as night watchman, that he was hired mostly to watch out for fires, and that if he observed any law violation at night “I expected him to call the Chief of Police” or town marshal. While Courville had au *449 thority to make arrests it was only the same authority that every private citizen has and was not conferred on him by virtue of his position. The witnesses who testified on the point had never seen him make an arrest. He did not have a uniform, did not take an oath of office, was not under bond, no commission was issued to him, his duties were not prescribed by statute, and his employment was not for any fixed term. The only factor that tends to class him as an officer was that in his job he had some of the appearances of a night policeman; but that is not enough to distinguish him as an officer rather than as an employee.
Courville had another small job, under separate arrangements, which was to meet two night trains, receive the mail, and deliver it to the nearby post office. Defendant made some effort to show that at the time he met his death Courville was acting within the scope of that job rather than as night watchman, since a mail sack was found near his body. However, he was doing that job before Basile hired him as night watchman; the council knew of that job and did not object to his continuing to handle it, as it was not considered as causing any interference with his duties as night watchman. We entertain no doubt that at the time he was shot Courville was acting within the course and scope of his employment as night watchman and his accident arose out of that employment. If any other rights existed in favor of his widow by virtue of his mail-carrying job that would not enter into the picture here.
For these reasons the judgment of the lower court is affirmed.