545 So.2d 1129 (1989)
Carolyn A. ROBIN
v.
Raoul "Skip" GALAN, Clerk of Court of Jefferson Parish.
No. 89-CA-75.
Court of Appeal of Louisiana, Fifth Circuit.
June 7, 1989.
Roger I. Dallam, Greenberg & Dallam, Gretna, for Carolyn A. Robin, plaintiff-appellee.
Edmund W. Golden, Richard D. Faulkner, and Don C. Gardner, Golden & Fonte, PLC, Metairie, for Jon Gegenheimer, Clerk of Court of Jefferson Parish, defendant-appellant.
Before KLIEBERT, DUFRESNE and WICKER, JJ.
KLIEBERT, Judge.
Plaintiff, Carolyn Robin, a deputy clerk, sued Raoul "Skip" Galan, Clerk of Court of Jefferson Parish, defendant, for one year's wages and reasonable attorney fees alleging a retaliatory discharge within the intendment of LSA-R.S. 23:1361(C).[1] On *1130 June 30, 1988, Galan's last day in office, the trial judge found a retaliatory discharge had occurred and cast "Raoul `Skip' Galan, Clerk of Court, Jefferson Parish" for $15,000.00 plus attorney fees of $2,250.00, and interest and costs. Shortly thereafter, a Motion for New Trial was filed by Jon A. Gegenheimer, Clerk of Court, as successor in office to defendant, Raoul "Skip" Galan. When the new trial was denied, a motion for appeal was filed by Gegenheimer's attorney for the defendant and perfected as a suspensive appeal. Robin answered the appeal, seeking an increase in attorney fees.
After the record was lodged with this court, Jon Gegenheimer, as Clerk of Court, successor in office to Raoul "Skip" Galan, Jr., Clerk of Court, filed peremptory exceptions of no right of action and no cause of action. The exception of no right of action was grounded in the contention Robin did not come within the purview of the Louisiana Worker's Compensation Act, Revised Statutes Title 23, because she was a public official within the meaning of LSA-R.S. 23:1034(B), (C).[2] The companion exception of no cause of action was grounded in the contention Robin's complaints were personal to Raoul "Skip" Galan and hence not enforceable against the Clerk's office or against his successor, Jon Gegenheimer. For the reasons hereafter stated, we dismiss the exceptions and amend the trial court judgment to increase the attorney fees to $3,000.00 and as thus amended, affirm.

FACTS
Robin was originally hired in 1971 during the term of Galan's predecessor in office, William Justice. She had held positions as a civil minute clerk, as a criminal minute clerk, and a deputy clerk in the criminal records room. In March 1984, while Justice held the Clerk's office and she was a deputy clerk in the criminal records room, Robin suffered a head injury at work which caused her severe headaches. She received weekly compensation benefits for her injuries. Feeling she was physically able to return to work and with her doctor's approval (he released her for work), on July 23, 1984 she attempted to resume her previous position as file clerk for the criminal records room. By that time Galan had succeeded Justice as Clerk of Court. Robin approached Galan's chief deputy, Gary Aspiazu, about returning to her job in the criminal records room. Aspiazu stated the position had been filled (there is some dispute as to whether it had been filled or not) but offered plaintiff a position in the microfilm department or as a janitor, apparently at the same rate of pay as when she left. Robin attempted to perform the microfilming work that afternoon but the flash of lights used in microfilming caused her to suffer a recurrence of severe headaches. After work she returned to the hospital and was advised by her doctor, Thor Borreson, M.D., not to continue in the microfilming department. When Galan did not respond to Dr. Borreson's telephone calls, made for the purpose of informing him of Robin's problems, the doctor revoked his release allowing her to work.
Following a period of recovery her doctors concluded she could perform her duties as a records clerk, but not in the microfilm department. Hence, she again attempted to return to work in September *1131 and October 1984 but was advised by Aspiazu only the microfilming job was now available. Therefore, she retained an attorney who sent a demand letter to Galan asserting her rights under the Louisiana Worker's Compensation Law, including her potential claim for a retaliatory dismissal. Robin was called to Galan's officeshe thought for the purpose of going back to work. Instead, according to her testimony, upon being asked and stating that she agreed with her attorney's letter and intended to pursue her compensation claim, she was fired. Her official discharge forms, i.e., "Pink slip" stated she was terminated for excessive absenteeism. Galan denied firing her for pursuing her compensation claim.
During her temporary disability between March and July 1984, Robin's medical bills were paid and she received weekly compensation benefits. Subsequently, she made a claim for additional compensation benefits for the period subsequent to July 1984. Initially this was denied. However, the claim was ultimately amicably resolved in a lump sum settlement with the Clerk's worker's compensation insurance carrier.
On a credibility call the trial court accepted Robin's version of the firing, found there was a compensable retaliatory discharge, and accordingly, rendered judgment in Robin's favor.

THE LAW
Under his exception of no right of action, Gegenheimer argues Robin was not within the purview of LSA-R.S. 23:1361(C) [see footnote (1) ] because she was a public officer as defined by LSA-R.S. 42:1[3] and as such exempt from coverage under the compensation act. On the other hand, although admittedly a deputy clerk, counsel for Robin contends she is not a public officer and hence covered under the act by its own terms or alternatively by virtue of her voluntary election to be covered by the act. Initially, we considered a remand because even though compensation benefits were paid to Robin, there is a paucity of evidence to show whether coverage under the compensation act was voluntarily elected by Robin and the Clerk of Court. Nevertheless, since we reached the conclusion Robin was not a public official we need not consider her counsel's argument of voluntary coverage.
In Cloud v. State, 420 So.2d 1259 (3rd Cir.1982) writ denied 423 So.2d 1166, the Third Circuit at pages 1262-1263 discussed the test used to distinguish between employees and public officials as follows:
"Other cases on the subject have used various tests to distinguish between employees and public officials. When measured by these tests, deputy coroners come out looking like public officials. For example, a public official acts as agent of the State and exercises a portion of the sovereign power. Hryhorchuk v. Smith, 390 So.2d 497 (La.1980); Courville v. Globe Indemnity Co., 63 So.2d 446 (La.App. 1 Cir.1953). Another test is whether the office involves a large degree of independence and the public servant is not under the direct control and supervision of an employer. Hall v. City of Shreveport, 157 La. 589, 102 So. 680 (1925); Landry v. City of New Iberia, 223 So.2d 922 (La.App. 3 Cir. 1969). A public official makes important policy decisions. Courville, supra. He has no contractual relationship with the State. In the case of McBeth v. Salvation Army, 314 So.2d 468 (La.App. 4 Cir.1975), the court stated: `Under our compensation law, the essence of the employer-employee relationship is a contractual hiring, either express or implied; in the absence of such a relationship, the law is not applicable'. (See also Hall, supra; Jeansonne v. Parish of East Baton Rouge, 354 So.2d 619 (La.App. 1 Cir.1977); Malone and Johnson, Louisiana *1132 Workers' Compensation Law and Practice, § 51 (2nd Edition 1980)). A public official has to meet certain qualifications prescribed by law. Courville, supra. Clearly, Dr. Cloud's position meets these tests: he derived his authority from legislative enactment and exercised a portion of the sovereign power to the same extent as the Coroner himself; he was completely independent and not under the control or supervision of anyone, not even Dr. Tischler; he made important policy decisions, for example whether or not to commit a person to a mental hospital; he had no contractual relationship with the State; and he was statutorily required to have the same qualifications as the Coroner."
Robin does not dispute that she was employed by the Clerk of Court of Jefferson Parish, and in connection with her employment was appointed by the Clerk of Court as a Deputy Clerk of Court, who, by law, possessed all of the powers and authority granted by law to the Clerk.[4] However, paragraph two of Code of Civil Procedure Article 255 provides that deputy clerks and other employees of a clerk of court are subject to his direction and supervision and shall perform the duties assigned to them by law, the Court, and the Clerk. Here, Robin was under the supervision of the supervisor in the record room, Carol Marse, at the time of her injury; the Chief Deputy Clerk, Gary Aspiazu, and the Clerk of Court, Galan, at the time of her firing.
Applying the criteria enunciated in Cloud, supra, it is evident Robin was at least one step removed from a public official. She held her Deputy Clerk status at the whim of her employer, the Clerk, and derived whatever power and authority she exercised through the Clerk, and thus lacked any degree of independence. Unlike a public official who is elected by the people, not under the direct control and supervision of an employer, and exercises a large degree of independence in making policy decisions, Robin was in fact a low echelon, rank-and-file employee of the Clerk's office. As such she was subject to the at-will predilections of the Clerk in his hiring and firing practices.
For the reasons stated therefore we believe the exception of no right of action is without merit and hence dismiss it.
Under his exception of no cause of action, counsel for Gegenheimer contends the petition was filed against, and the judgment rendered against Raoul "Skip" Galan, Clerk of Court of Jefferson Parish and did not relate in any way to Gegenheimer or any of his deputies. Consequently neither Gegenheimer personally nor in his capacity as the Clerk of Jefferson Parish has liability.
From a review of the record it is evident the initial action was filed against Galan in his capacity as Clerk of Court and not in his individual capacity. Moreover, the cause of action alleged in the petition is one which can be brought solely and exclusively against the employer by an employee who has been unlawfully discharged. Further, judgment was rendered against Galan in his capacity as Clerk of Court, not as an individual.
Immediately after judgment was rendered Gegenheimer substituted himself in Galan's place and stead by filing a voluntary motion for a new trial and, when denied, filed a motion for a suspensive appeal. Therefore, unquestionably, Gegenheimer has substituted himself in his capacity as the Clerk of Court of Jefferson Parish for Galan, the same as though he had followed the formal requirements of the motion and order prescribed by Code of Civil Procedure *1133 Article 806. Having elected to substitute himself, Gegenheimer, by means of the exception, seeks from this Court an answer to a question which is premature (prior to an effort to collect) and tantamount to a request for an advisory opinion, i.e., is he, as the successor to the Clerk's office, required to pay the judgment? Nevertheless, out of judicial expediency we address the question.
Gegenheimer bases his contention of non-liability on Liberty Mutual v. Grant Parish, 350 So.2d 236 (3rd Cir.1977), writ refused 352 So.2d 235 (La.1977). However, we note the rationale of the Louisiana Supreme Court decision in Jenkins v. Jefferson Parish Sheriff's Office, 402 So.2d 669 (La.1981).[5] There the Supreme Court reversed the trial and appellate courts and held that an employment relationship existed between the sheriff and his deputies because the sheriff hires, fires, directs and controls, and supervises his deputies, decides their work hours, work locations, scope of responsibility, and duties. In view of this relationship, the sheriff was held liable in his official but not his individual capacity as the employer of the deputy. Further, in Bulot v. Justice, 524 So.2d 269 (5th Cir.1988) this court has held that the clerk's office, not the individual clerk, is responsible when liability is imposed based on a master-servant relationship.
In the case at bar, a master-servant relationship existed between Robin and Galan in his capacity as Clerk of Court. Robin's immediate supervisor of criminal records testified Robin had personality conflicts with others in the office, but otherwise her work was satisfactory. Aspiazu obviously had direct control and supervision over plaintiff in that he could assign her to work in criminal records, microfilming, or as a janitor. Accordingly, under the rationale of the above discussed cases, we dismiss the exception of no cause of action.
In its reasons for judgment, the trial court found that upon Robin's initial return to her employment in July of 1984 she was told by Aspiazu that her position had been filled, when in fact the position was not filled and thus his action was merely an attempt to force her to quit or accept a less desirable position in microfilming or as a janitor. She attempted the microfilming but could not perform because of her injuries. When she again sought the alternative position, she was informed only the microfilming job was open. Finally, when she met with Galan immediately after she informed him she intended to pursue her claim, including the one for a retaliatory discharge, he terminated her employment. Thus, the court found a retaliatory discharge took place and cast the clerk's office in judgment. We have no reason to disagree.
Robin answered the appeal and requests an increase in attorney fees to cover the appeal. We believe increasing the attorney fee award to $3,000.00 will adequately compensate her attorney. Accordingly, the trial court judgment is amended to provide for attorney fees of $3,000.00 and as thus amended, affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] LSA-R.S. 23:1361(C) provides in pertinent part as follows:

"C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with a reasonable attorney's fee."
[2] LSA-R.S. 23:1034(B), (C) provide as follows:

* * * * * *
"B. Except as expressly and specifically provided to the contrary in Subsection A hereof, the officials excepted from coverage under the provisions of this Chapter, in Subsection A of this Section, include all public officers as defined by R.S. 42:1. In this regard, sheriffs' deputies are, under R.S. 42:1, 33:1433, and 33:9001 et seq., appointed public officers and officials of their respective political subdivisions, the parish law enforcement districts.
C. Notwithstanding the provisions of Subsection A hereof, any political subdivision may, in its own discretion and by using its own funds available for same, provide worker's compensation coverage for its officials, in addition to having to provide such coverage for its employees."
[3] LSA-R.S. 42:1 provides as follows:

"Public office defined
As used in this title, the term "public office" means any state, district, parish or municipal office, elective or appointive, or any position as member on a board or commission, elective or appointive, when the office or position is established by the constitution or laws of this state.
"Public officer" is any person holding a public office in this state."
[4] Code of Civil Procedure Article 255 provides as follows:

"Deputy clerks and other employees
Except as otherwise provided by law, a deputy clerk of a court possesses all of the powers and authority granted by law to the clerk, and may perform any of the duties and exercise any of the functions of the clerk.
Deputy clerks and other employees of a clerk of court are subject to his direction and supervision, and shall perform the duties assigned to them by law, the court, and the clerk.
The clerk of a court is responsible for the performance or nonperformance of their official duties by his deputies and other employees."
[5] Although the result of the case was subsequently changed by the State Legislature (See LSA-R.S. 42:1441.2B), its rationale is still valid.