Melanie STARKMAN

v.

Rev. Nicholas EVANS, individually and in his capacity as Senior Pastor of Munholland United Methodist Church, and Munholland United Methodist Church

No. Civ.A. 97–293.

United States District Court,
E.D. Louisiana.

Aug. 26, 1998.

David Anthony Dalia, David A. Dalia, Attorney at Law, New Orleans, LA, for Plaintiff.

William E. Hester, III, Benjamin H. Banta, The Kullman Firm, New Orleans, LA, for Defendants.

### ORDER AND REASONS

FALLON, District Judge.

Plaintiff began her employment as Choirmaster with Munholland United Methodist Church ("Munholland") in December, 1992, and thereafter became the Director of Music. While employed, plaintiff allegedly suffered from a variety of disabilities, including asthma, osteoarthritis of both knees, migraine headaches, and endometriosis. She asserts that defendants refused to modify her work schedule to allow full recovery from knee surgery and, after she suffered chemical exposures from cleaning materials, refused to accommodate her chemical sensitivities. Her employment was terminated in May, 1995, and plaintiff filed suit against Munholland and Reverend Nicholas Evans, claiming that she was discharged in violation of the Americans with Disabilities Act ("ADA") and Louisiana retaliatory discharge law.

Before the Court is defendants' motion for summary judgment. Defendants have moved to dismiss plaintiff's state law claims on the grounds of prescription. Defendants also contend that Reverend Evans cannot

qualify as an "employer" under the ADA, and thus cannot be individually liable for any claims brought under the ADA. Last, defendants assert that plaintiff's claims against Munholland are barred by both the Free Exercise and the Establishment clauses of the First Amendment. For the following reasons, defendants' motion is HEREBY DENIED as it relates to prescription of plaintiff's state law claims and HEREBY GRANTED as it relates to plaintiff's ADA claims against Reverend Evans and state law and ADA claims against Munholland. In addition, because a retaliatory conduct claim is not maintainable against Reverend Evans, plaintiff's state law claims against Reverend Evans must be DISMISSED.

### ANALYSIS

**A. Prescription of Plaintiff's State Law Claims**

Plaintiff was dismissed from Munholland in May, 1995. The plaintiff filed this lawsuit in January, 1997. Defendants contend that claims under La. R.S. § 23:1361 are subject to a one-year prescription period, and that plaintiff's claims are thus barred. Retaliatory conduct in Louisiana is subject to a one-year prescriptive period, commencing on the date of discharge. *See, e.g., Autrey v. Energy Corp. of America, Inc.,* 594 So.2d 1354, 1358 (La.App. 3 Cir.1992). However, plaintiff filed a claim with the Office of Worker's Compensation Administration ("OWCA") in September, 1995. Filing such a claim will interrupt prescription on a retaliatory discharge action where the employer received notice of the claim prior to expiration of the prescriptive period. *See Maquar v. Transit Management of Southeast Louisiana, Inc.,* 593 So.2d 365, 367–68 (La.1992). The Court does not have before it information regarding notice, the length of the OWCA proceeding, or how long after the proceeding's culmination plaintiff filed this action. Defendants do not dispute plaintiff's contention that the prescriptive period was properly interrupted and cannot show that plaintiff's state law claims have prescribed.

## B. Reverend Evans' Liability Under the ADA

 It is undisputed that plaintiff was employed by Munholland, and not under any personal services contract with Reverend Evans. Defendants contend that individuals cannot be held liable under the ADA, and therefore, plaintiff's ADA claims against Reverend Evans must be dismissed.

The circuit has made it clear that individuals who do not otherwise qualify as "employers," as a sole proprietor would, cannot be held individually liable under Title VII of the Civil Rights Act of 1964 ("Title VII"). *Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994). Similarly, the Age Discrimination in Employment Act ("ADEA") provides no basis of relief against supervisors in their individual capacity. *Stults v. Conoco, Inc.,* 76 F.3d 651 (5th Cir.1996). As the "ADA's definition of 'employer' mirrors the definitions of 'employer' " in Title VII and in the ADEA, "individuals who do not meet the statutory definition of 'employer' cannot be held liable in their individual capacities under the employment provisions of the ADA." *Kacher v. Houston Community College System,* 974 F.Supp. 615, 618 (S.D.Tex.1997).

While the circuit has not ruled specifically on individual liability under the ADA, other circuits show the logic of *Kacher*'s reasoning. "Individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA." U.S. *EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1282 (7th Cir.1995). Because "the definition of 'employer' in the Disabilities Act is like the definitions in Title VII" and the ADEA, "there is no sound reason to read the Disabilities Act any differently from this Court's reading of Title VII and the Age Discrimination Act." *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996). Although some courts in the past have held that agents of employers may be held individually liable under the ADA for engaging in unlawful discrimination, *see, e.g., Jendusa v. Cancer Treatment Centers of America, Inc.,* 868 F.Supp. 1006

(N.D.Ill.1994), "the better rule is that individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA," *Hardwick v. Curtis Trailers, Inc.,* 896 F.Supp. 1037, 1039 (D.Or.1995).[1] Thus, Reverend Evans may not be held individually liable under the ADA.

## C. The First Amendment Bars Plaintiff's Claims Against Munholland

### 1. The Establishment Clause

 Defendants contend that if this Court were to apply the ADA or state employment law to this case, it would violate the third step of the *Lemon v. Kurtzman* test for a violation of the Establishment Clause, fostering an "excessive government entanglement with religion," 403 U.S. 602, 612–613, 91 S.Ct. 2105 (1971). Defendants portray their involvement in this suit as an example of the "very process of inquiry leading to findings and conclusions" that can lead to a violation of the Establishment Clause, *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 502, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979).

The greatest concern expressed by courts is that they will be "placed in the impermissible position of having to evaluate competing opinions on religious subjects." *EEOC v. Catholic University of America,* 83 F.3d 455, 465 (D.C.Cir.1996) (internal citations omitted). The Court must avoid disputes that cannot be resolved "without entangling the Government in questions of religious doctrine, polity, and practice," and that contain issues which cannot be analyzed "in purely secular terms." *Id.* 83 F.3d at 466 (internal citations omitted). Plaintiff's argument places the Court in just such a position. She looks to the *Standards for Certification in Music Ministry in the United Methodist Church* to bolster her position. She cites *The Book of Discipline* in detailing the "specials gifts, evidence of God's grace, and promise of usefulness" that show a "calling" for the ministry. Pla.'s Decl. at 3. Most

---

1. For a thorough discussion of the holdings of other circuits, see *AIC Security,* 55 F.3d at 1280–1282 (noting that "the more recent and more detailed decisions" counsel against individual liability), and *Wathen v. General Elec. Co.,* 115 F.3d 400, 404 n .6 (6th Cir.1997) (noting that because "Title VII, the ADEA, and the ADA define 'employer' essentially the same way, an analysis based on Title VII, the ADEA, and the ADA case law is appropriate").

seriously, she cites "John Wesley's principles of social justice" and the statement of the duties of Christians and Christian ministers in the "Articles of Religion of the Methodist Church" as evidence that the Church should obey the commands of the ADA. Pla.'s Decl. at 7. Similarly, defendants have supported their arguments with reference to the "1994 Ministry of Excellence to Music," as well as excerpts from the *United Methodist Hymnal* and the standards for certification as a Director or Music Ministry. Aff. of Rev. Evans.

While defendants' argument that continual defense of this lawsuit will mean an impermissible entanglement is certainly not without merit, dismissal at this stage of the litigation would be premature. As the merits of plaintiff's discrimination claim have not been presented to the Court, it is not clear if plaintiff has even made out a prima facie case of employment discrimination. The defendants have not yet attempted to justify to the Court plaintiff's dismissal on non-discriminatory or religious grounds.[2] Thus, there has been no intrusion by the Court into the internal governance of Munholland. The circuit is clear that mere "hypothetical concerns," and the "bare potential" that an employment discrimination inquiry would impact religious beliefs "does not warrant precluding the application" of the law to religious employers. *EEOC v. Mississippi College*, 626 F.2d 477, 487 (5th Cir.1980). Thus, the Establishment Clause cannot at this stage bar plaintiff from proceeding.

### 2. Free Exercise Clause

■ The Court next turns to the issue of whether plaintiff's claims against Munholland are barred by the Free Exercise Clause. In *McClure v. Salvation Army*, 460 F.2d 553 (5th Cir.1972), the Fifth Circuit became the first circuit to articulate the "ministerial exception" to employment discrimination claims. *Rayburn v. General Conference of Seventh–day Adventists*, 772 F.2d 1164, 1168 (4th Cir.1985). In *McClure*, the circuit held that "the application of the provisions of Title

VII to the employment relationship existing between … a church and its minister … would result in an encroachment by the State into an area of religious freedom which it is forbidden to enter by the principles of the free exercise clause." 460 F.2d at 560.

■ If plaintiff is considered a "minister" and falls under the exception, this Court may not inquire into her employment and must dismiss plaintiff's claims against Munholland. Conversely, if plaintiff was simply "employed to perform tasks which are not traditionally ecclesiastical or religious," she is not "entitled to *McClure*-type protection" under the Free Exercise clause, *EEOC v. Southwestern Baptist*, 651 F.2d 277, 285 (5th Cir.1981), and she may proceed. The Court's determination of plaintiff's "status" as a minister "for purposes of *McClure* remains a legal conclusion." *Id.* 651 F.2d at 283. An individual's designation by an organization is neither necessary nor sufficient to control the designee's "extra-religious legal status." *Id.* Instead, the Court must look to the actual role of the plaintiff at Munholland. Similarly, the "focus of the ministerial exception is on the action taken, not possible motives," *EEOC v. Catholic University of America*, 83 F.3d 455, 465 (D.C.Cir.1996), and thus a court "may not inquire whether the reason for [the adverse employment action] had some explicit grounding in theological belief." *Rayburn v. General Conference of Seventh–day Adventists*, 772 F.2d 1164, 1168 (4th Cir.1985). Therefore, defendants need not advance a theological explanation regarding its allegedly illegal employment actions.

■ One factor is whether employment decisions regarding the position at issue are made "largely on religious criteria," *Southwestern Baptist*, 651 F.2d at 283, although it is clear that merely serving as "exemplars of practicing Christians" is insufficient, *EEOC v. Mississippi College*, 626 F.2d 477, 485 (5th Cir.1980). Plaintiff claims that her audition was "based strictly on my abilities as a choral director," and that the position "only specified that Christian character was necessary," with "no mention of being a spiritual leader."

---

**2.** While "conclusory allegations" that plaintiff was dismissed for religious reasons would be insufficient, *Gargano v. Diocese of Rockville Cen-* *tre*, 80 F.3d 87 (2d Cir.1996), a genuine religious dispute would pose different issues for the Court.

Pla.'s Decl. at 1, 3. However, the Director's coursework must include the Bible and Theology and the position requires "renewal of spiritual life." Def.s' Statement of Uncontested Fact.

A second consideration is whether the plaintiff was "qualified and authorized to perform the ceremonies" of the Church. *Southwestern Baptist*, 651 F.2d at 284. Plaintiff maintains that others "preached, led prayers, gave announcements, read scripture, . . . welcomed new members, . . . performed the sacraments, . . . [and led] prayer groups or conduct[ed] Bible studies." Pla.'s Decl. at 2. The defendants counter with plaintiff's own Answers to Interrogatories, in which she lists twenty-one duties under the category of "religious or worship-oriented job duties," compared to only three entries for "nonreligious, nonworship-oriented, or secular job duties." Ans. to Inter. 6 & 7. Plaintiff lists nineteen of the twenty one religious tasks as "essential," while she designates all of her three nonreligious duties as "not essential." *Id.* In addition, while plaintiff now contends that participation in religious ritual and worship was not a primary duty, and that hours on Sunday were not counted as weekly employment hours, Pla.'s Decl. at 4, plaintiff's role was undeniably to lead the congregation in singing during the Sunday worship services. Defendants have submitted a copy of Munholland's 1994 Ministry of Excellence in Music, proclaiming that the "Music Ministry of Munholland United Methodist Church sees music as a gift from God. Making and listening to music can be, therefore, an act of prayer, an expression of faith, and a form of spiritual discipline." Def.s' Ex. 2A.

The third and most pertinent factor is whether plaintiff is "engaged in activities traditionally considered ecclesiastical or religious," *Southwestern Baptist*, 651 F.2d at 284, including whether plaintiff "attends to the religious needs of the faithful," *Mississippi College*, 626 F.2d at 485. Plaintiff currently avers that "virtually all of my primary weekly duties did not consist of teaching, spreading the faith . . . or participation in religious ritual and worship." Pla.'s Decl. at 4. Again however, plaintiff lists nineteen religious or worship oriented duties as "essen-

tial," compared to zero for her non-religious or non-worshipful duties. In addition, plaintiff refers to other "unstated spiritual [and] ministerial" requirements of the job. Pla.'s Ans. to Inter. 7. While plaintiff now declares that attending to the "religious needs of the faithful" was not a primary duty," Pla.'s Decl. at 4, she admits that she was designated to be a "ministerial presence" to one ailing parishioner, and spent "numerous hours at the bedside" of another. Pla.'s Ans. to Inter. 7. This was in addition to frequent "visitation or telephoning of choir members." *Id.* Although her latest submission disputes the centrality of her instruction in religious doctrine, plaintiff listed "Worship/Evangelism meeting and planning of worship liturgy . . . recruitment of choir members . . . [and] spiritual, musical and emotional bonding" as essential duties. *Id.* Plaintiff originally pointed to her need to carry out her "seasonal obligations such as All Saints' Day, Advent, [and] Christmas" and authorship of articles for the Church newsletter introducing "liturgical seasons for worship service." *Id.* And of course, plaintiff, as the Director of Music, was a very visible presence in leading the congregation during the Sunday worship service itself.

Applying the evidence in the light most favorable to the plaintiff to the above factors, the Court finds that plaintiff's position is within the parameters of this circuit's ministerial exception. Although not as undeniably ministerial as the position in *McClure* or that of the faculty in *Southwestern Baptist*, the position is far from the faculty in *Mississippi College*, who clearly did not serve the role of "intermediaries between a church and its congregation," or "attend the religious needs of the faithful," 626 F.2d at 485, nor is it similar to the support staff who worked in maintenance, or the administrators who supervised finance, maintenance, and other non-academic departments in *Southwestern Baptist*, 651 F.2d at 284. The Director of Music at Munholland was responsible for duties squarely within the conventional understanding of ecclesiastical or religious functions, and was not a position mainly performing "tasks which are not traditionally ecclesiastical or religious." *Southwestern Baptist*, 651 F.2d at 284.

The development of this circuit's ministerial exception by other circuits supports this Court's determination that plaintiff falls within the exclusion. Citing *Southwestern Baptist* and its application to seminarians, *EEOC v. Catholic University of America* makes it clear that "the ministerial exception has not been limited to members of the clergy." 83 F.3d 455, 461 (D.C.Cir.1996) (*citing Rayburn v. General Conference of Seventh-day Adventists,* 772 F.2d 1164, 1169 (4th Cir.1985)). In fact, the "ministerial exception encompasses all employees of a religious institution, whether ordained or not, whose primary functions serve its spiritual and pastoral mission." *Catholic University,* 83 F.3d at 463 (*citing Rayburn,* 772 F.2d at 1169). In determining whether plaintiff's responsibilities are "essentially religious," the Court must inquire whether her "primary duties ... consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship." *Catholic University,* 83 F.3d at 464 (*citing Rayburn,* 772 F.2d at 1169). Because the Court finds that plaintiff's position as Director of Music was essentially religious and primarily served the spiritual and pastoral mission of Munholland, Munholland is entitled to invoke the ministerial exception to bar all plaintiff's claims against it. Of course, this does not mean that every music director in every church falls within the ministerial exception.[3] But in the case at hand, the plaintiff's duties played an integral role in the ministerial functions of Munholland. For this reason, she is covered by the exception.

**D. Reverend Evans' Liability Under State Law**

■ The Court having dismissed plaintiff's state and ADA claims against Munholland and plaintiff's ADA claims against Reverend Evans, the remaining issue is whether plaintiff may proceed against Reverend Evans

with her retaliatory discharge claim under La. R.S. § 23:1361. Section 1361(C) states that an employee discharged in violation of the statute shall be entitled to recover civil penalties "from the employer or prospective employer who has violated the provisions of this Section." *Id.* Louisiana state courts interpreting this language have determined that a claim under this section "is one which can be brought solely and exclusively against the *employer* by an employee who has been unlawfully discharged." *Robin v. Galan,* 545 So.2d 1129, 1132 (La.App. 5 Cir.1989) (emphasis added).

Munholland, not Reverend Evans, was the plaintiff's employer. Reverend Evans does not fit the definition of an employer under section 1361, and *Robin* is clear that the plaintiff cannot assert a state law retaliatory discharge claim against him in his individual capacity. Therefore, plaintiff's state law claims against Reverend Evans must be dismissed.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is HEREBY DENIED as it relates to prescription of plaintiff's state law claims and HEREBY GRANTED as it relates to Reverend Evans' liability under the ADA and Munholland's liability under the ADA and state law. In addition, because plaintiff can not maintain a retaliatory discharge action against Reverend Evans, the Court must DISMISS this remaining claim. Therefore, plaintiff's action is DISMISSED with prejudice and with costs.

---

3. The Court notes that mere governance and supervision or a role in outreach is not sufficient. In *Weissman v. Congregation Shaare Emeth,* the Eighth Circuit allowed the former administrator of a Jewish temple to proceed on his employment discrimination claim, despite his position of authority and despite the requirement that he have "a positive attitude towards Jewish life and a

Jewish background," an understanding of the Temple's "highest ideals and goals," and the ability to "promote a positive image of the Temple among its members and the public by being accessible and knowledgeable." 38 F.3d 1038, 1040 (8th Cir.1994). However, the plaintiff there "played no role in decisions relating to spiritual matters." *Id.*